## CAYLOR v. NUNN. (No. 1848.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 9, 1921. Rehearing Denied Dec. 14, 1921.)

1. **Libel and slander** ⬳42(1), 48(1)—**Report of judicial proceedings not privileged unless true.**

Under Rev. St. art. 5597, providing that a fair, true, and impartial account of the proceedings in a court of justice or other official proceedings and reasonable and fair comment or criticism on matters of public concern are privileged, a newspaper account of contempt proceedings was not privileged unless true.

2. **Libel and slander** ⬳42(1)—**Publication of allegations of petition in connection with granting of preliminary injunction privileged.**

While a publication of the allegations of a petition charging fraud before any action of the court thereon would not have been privileged, the granting of a preliminary injunction was such a court proceeding as authorized the publication of such fact and a statement in connection therewith of the allegations of the petition.

3. **Libel and slander** ⬳42(1)—**Newspaper account of contempt proceedings held privileged, though inaccurately including a party in those charged with fraud.**

Where L. and W. were enjoined from selling a store, but sold it to C., who, with the others, was convicted of contempt, a newspaper article, which after naming all three parties stated that the conviction was the culmination of a swindle alleged to have been perpetrated by "defendants," but following this by a particular statement of facts from which it appeared that W. alone was charged with perpetrating the fraud, was true, fair, and impartial, and privileged under Rev. St. art. 5597; the inclusion of C. in the "defendants" charged with the swindling being a mere inaccuracy of statement.

4. **Libel and slander** ⬳123(8)—**Question of privilege as dependent on meaning of unambiguous language is question for court.**

In an action for libel, the question of the meaning of the language used is in the first instance for the court, and if such a meaning is not ambiguous, it is the duty of the court to decide whether it was privileged.

5. **Libel and slander** ⬳123(8)—**Question of privilege for jury when language ambiguous.**

In an action for libel if the meaning of the language used and claimed to be privileged is ambiguous, the proper practice is to submit the question of its meaning to the jury.

Appeal from District Court, Hemphill County; W. R. Ewing, Judge.

Action by George F. Caylor against J. E. Nunn. From a judgment for defendant, plaintiff appeals. Affirmed.

W. H. Russell, of Hereford, and Hoover, Hoover & Willis, of Canadian, for appellant.

---

Kimbrough & Kimbrough and Underwood & Jackson, all of Amarillo, and Sanders & Jennings and J. E. Ritchie, all of Canadian, for appellee.

BOYCE, J. Appellant, Geo. F. Caylor, brought this suit against defendant, J. E. Nunn, as proprietor of the Amarillo Daily News and the Daily Panhandle, newspapers published at Amarillo, Tex., to recover damages on account of certain alleged libelous matter published in said papers concerning the plaintiff. On the trial the court, upon conclusion of the evidence, gave a peremptory instruction for the defendant, and the plaintiff appeals.

The publication referred to was a report of contempt proceedings, and comment thereon, against A. F. Luse and Geo. F. Caylor, for violation of an injunction issued in a suit in which S. B. Christian was plaintiff and A. F. Luse and W. L. Watson were defendants. A clear understanding of the case will be obtained from a statement of the actual facts as to the injunction suit and contempt proceedings growing out of it, followed by copies of the alleged libelous reports of these proceedings. S. B. Christian filed a suit in the district court of Potter county against W. L. Watson, who was alleged to be a resident of El Paso county, and A. F. Luse, alleged to be in Potter county, alleging that on November 27, 1918, he was the owner of a drug store in Amarillo, Tex., and at such time sold and delivered said property to Watson, receiving in exchange therefor certain notes of a third party, secured by vendor's lien on land in Webb county, Tex.; that the said Watson, in order to induce plaintiff to accept said notes, made false representations as to the quality, location, condition, and value of said land; that A. F. Luse was a party to such fraudulent representations, and confirmed them by statements of his own; that Watson thereafter made a simulated sale to Luse for the purpose of enabling Luse to sell said property to an innocent purchaser; that Watson was not in Amarillo, but Luse was his agent, and was in Amarillo in possession of said drug store, and that said defendants were attempting to sell said property to innocent purchasers. Plaintiff tendered the notes to the defendants, and prayed for a rescission of said contract. He also asked for an injunction, restraining the defendants from selling said property. A preliminary injunction was granted on the 5th day of December, 1918, restraining the defendants, Watson and Luse, from "trading, selling or disposing of said property, or offering to do so." On December 7, 1918, Christian filed a motion to have A. F. Luse and Geo. F. Caylor held in contempt of court for violating said injunction, alleging that the said A. F. Luse, after service of the writ of injunction upon him, had purported to sell said property to Geo. F. Caylor,

and had delivered a bill of sale of said property to him; that Caylor knew that the injunction was being disobeyed in the sale of said property and became a party to the disobedience of said injunction and contempt of court involved therein. Writs of attachment for Luse and Caylor were issued on the 7th day of December, 1918, and they thereafter appeared and answered. On December 11, 1918, the court entered judgment in the contempt proceeding. In such judgment the court found that the material allegations in the motion for contempt were true; that the said Luse and Caylor had violated the terms of said injunction, in that Luse had, after the service of the writ of injunction, sold said property to Caylor, and that Caylor had at such time knowledge of the issuance and service of the writ on Luse. Each of said defendants were accordingly fined the sum of $100, and committed to imprisonment in the Potter county jail for two days. The reports of such proceedings complained of by the plaintiff, Caylor, were contained in the issues of the Amarillo Daily News of December 8th and of the Amarillo Daily News and the Daily Panhandle of December 12th. The publication in the Amarillo Daily News of December 8th is as follows:

"Two Men will be Tried on Contempt of Court Charges.

"A. F. Luse and Geo. F. Caylor were arrested at the Hotel Amarillo yesterday evening on a charge of contempt of court by Wiley Pollard, undersheriff of Potter county, and arraigned before District Judge Henry S. Bishop, about 7:30 p. m. The case was continued until Wednesday of this week, the defendants giving bond for their appearance were released.

"About two weeks ago S. B. Christian claims he traded his drug stock on East Fifth street of this city to W. L. Watson, who gave El Paso as his former residence. Mr. Watson, it is claimed by Mr. Christian, gave him some vendor's lien notes in exchange for his stock and upon investigation, he asserts, it was found the vendor's lien notes were worthless to Mr. Christian. Mr. Watson had left town and A. F. Luse appeared upon the scene and claimed to be interested in the deal with Mr. Watson. This Mr. Christian declares he never knew. He secured an injunction against Watson and Luse, making any disposal of the drugs. After the injunction had been obtained, Mr. Luse sold, traded or exchanged the merchandise to Geo. F. Caylor, it is said. A complaint was filed and arrests soon followed. The contempt of court cases come under the Criminal Code and will be further tried Wednesday of this week. A. F. Luse and Geo. F. Caylor live in Hereford."

The publication in the Amarillo Daily News and the Daily Panhandle of December 12th, is as follows:

"Luse and Caylor are Fined—Given Two Days in Prison.

"The contempt of court cases which were continued from Saturday of last week to

Wednesday against A. F. Luse, Geo. F. Caylor and W. L. Watson, came up for further hearing yesterday, with the result that the defendants, A. F. Luse and Geo. F. Caylor, were fined the sum of $100.00 each, and two days' imprisonment in the Potter county jail. The third defendant, W. L. Watson, is still at large.

"The arrest, trial and conviction of Luse and Caylor is the culmination of a swindle, it is alleged, perpetrated by the defendants against S. B. Christian. Mr. Watson resides in El Paso and several weeks ago he traded Mr. Christian some vendor's lien notes for his drug stock on Fourth street. A short time afterward Mr. Christian discovered that the notes were worthless or was so advised by his attorney. He immediately secured an injunction restraining any disposition being made of the merchandise, pending a civil process. Mr. Wilso, it is said, left town and has not been found.

"The other defendants are residents of Hereford and claim an interest in the business by virtue derived from Watson and it is claimed they violated the terms of the injunction and their arrest at Amarillo Hotel Saturday by Deputy Sheriff. Wiley Pollard, followed. As they were not prepared to go to trial Saturday, the case was continued until Wednesday."

The plaintiff's petition, under appropriate allegations, sought recovery of damages for the publication of the foregoing articles. The defendant pleaded that the publications were privileged, true, and made without malice. The facts, as above stated, were shown on the trial of the case. In addition the plaintiff offered testimony that would exonerate him from any charge of fraud in connection with the sale of the drug store by Christian to Watson, or in Caylor's subsequent dealing with it. The uncontroverted evidence offered by plaintiff himself negatives any actual malice on the part of the defendant, or his employees responsible for the publication.

[1] It is claimed by the appellee that the publications come within two of the grounds of privilege named in article 5597, R. C. S., to wit:

"1. A fair, true and impartial account of the proceedings in a court of justice * * * or any other official proceedings authorized by law in the administration of the law"; "4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

There being no actual malice shown, it is apparent that the disposition of the appeal depends on a finding as to whether the publication was in fact privileged. Article 5597, R. C. S. The appellee further contends in this connection that, as the publication purported to be a report of the proceedings of a court and comment thereon, they are therefore privileged, and no action can be based thereon, even though statements made therein are false, unless actual malice be shown. This proposition "begs the question" in the premise that the publications were privileged. In respect to the first ground of privilege it is only a "fair, true, and impartial" report that is protected. If false statements are made the report is not true, and does not come within the terms of the ground of privilege. Wortham Carter Pub. Co. v. Littlepage, 223 S. W. 1043; Newell on Defamation, Slander and Libel, page 551 et seq.; 25 Cyc. 408, 409; American Publishing Co. v. Gamble, 115 Tenn. 663, 90 S. W. 1005. There is an obvious difference between the rule in a claim of privilege based on this ground and that of the character claimed in such cases as I. & G. N. Ry. Co. v. Edmundson (Com. App.) 222 S. W. 181; Foley v. McClain, 231 S. W. 459, and other authorities relied on by appellee to sustain this proposition. In those cases the basis of the ground of privilege of the character under consideration was "good faith." In the present case the truth of the report is by law made an essential element of the ground of privilege. Furthermore, the report must be confined to the actual proceedings, and, if additional statements are made of any matters of fact which are defamatory, these do not come within the privilege. 25 Cyc. p. 409; Newell, p. 556. The appellee's contention that the privilege of "reasonable and fair comment * * * of matters of public concern" protects against action for libel in the absence of actual malice, though statements of fact made in such comments may be false, is supported by the decision in the case of Express Publishing Co. v. Wilkins, 218 S. W. 618 (9-14). This decision may not be free from question. Galveston Tribune v. Johnson, 141 S. W. 302 (2-11); Newell, p. 568 et seq. We need not pursue this question further, however, because we are of the opinion that the question of privilege is to be decided under the first ground of privilege stated. The publication is a report of the proceedings of a court and statements made in connection therewith, and it is certain, we think, that such statements must be "true" in order to be privileged. The San Antonio court, the court which rendered the decision in the case of Express Co. v. Wilkins, supra, said of statements made in such character of comment:

"We are not able to perceive how comments upon. official proceedings, which are untrue and unfair, can become reasonable and fair by reason of the official proceedings being matters of public concern. Official proceedings, though they may relate to matters of public concern, must be viewed as official proceedings; and if newspaper comments upon them are not fair, true, and impartial, they cannot, under the law, be deemed privileged. If, as applied to official proceedings, the comments are untrue, they must necessarily be untrue as to the same proceedings when viewed as matters of public concern." San Antonio Light Publishing Co. v. Lowy, 52 Tex. Civ. App. 35, 113 S. W. 582.

See, also, 25 Cyc. 409; Newell, 556. So the inquiry in the case is: Was the report of the proceedings and statements made in connection therewith a "fair, true and impartial account" of the proceedings had in the court in reference to the injunction and charge of contempt? And we will proceed to a consideration of such question.

[2] In the first place, the petition for injunction charged Luse and Watson with fraud in the purchase of plaintiff's drug store. A publication of these allegations before any action of the court had been taken thereon would not have been privileged. Sutton v. Belo, 64 S. W. 686; Houston Chronicle Publishing Co. v. McDavid, 173 S. W. 471. But the granting of the preliminary injunction, though this was done in chambers, was such a court proceeding as authorized the publication of such fact and a statement in connection therewith of the allegations of the petition on which the injunction was granted. Mulhall v. Express Publishing Co., 225 S. W. 545; American Publishing Co. v. Gamble, 115 Tenn. 663, 90 S. W. 1009; Metcalf v. Times Publishing Co., 20 R. I. 674, 40 Atl. 864, 78 Am. St. Rep. 900; 25 Cyc. 407, 408.

[3] The report of the proceedings had on the charge of contempt would obviously come within the terms of the first ground of privileged named. But Caylor was not a party to the injunction suit, and was not charged with fraud therein. Neither was he charged in the motion for contempt with participation in the original fraud. The charge against him as contained in the motion and established by the judgment was that he violated the injunction by buying the property with knowledge of the court's injunction against its sale. While, therefore, a publication of the statement that Luse and Watson were charged with fraud would be privileged, the publication of a statement that Caylor was so charged would not be true, and would not be privileged. The only substantial inaccuracy or untruth we find in the publications, in so far as they affect Caylor, is contained in this statement, published in both newspapers on December 11th:

"The arrest, trial and conviction of Luse and Caylor is the culmination of a swindle, it is alleged, perpetrated by the defendants against S. B. Christian."

The "defendants" of this sentence must be held to refer to the persons mentioned in the preceding paragraph, to wit, Luse, Watson, and Caylor, and if this statement stood alone and unexplained, the peremptory instruction would have been erroneous. The whole publication, however, must be construed together, and we think it is reasonably clear to the ordinary reader that the inclusion of Caylor, by use of the general term "defendants," with those charged with swin-

dling, was merely an inaccuracy of statement. This general statement is followed by a particular statement of facts from which it appears that it was charged that Watson perpetrated the fraud and the other defendants violated the injunction which was issued to prevent the "culmination" of the fraud practiced by Watson.

[4, 5] The question of the meaning of the language of the publication was in the first instance for the court. If such meaning was not ambiguous, then it was the duty of the court to decide whether it was privileged. If the meaning was ambiguous "the proper practice is to submit the question to the jury." Guisti v. Galveston Tribune, 105 Tex. 497, 150 S. W. 878 (9, 10), 152 S. W. 167; American Publishing Co. v. Gamble, 115 Tenn. 663, 90 S. W. 1008; Mulhall v. Express Publishing Co., 225 S. W. 546 (1, 2, 6).

We conclude that the trial court was warranted in holding that the report was a substantially "true, fair and impartial account" of the proceedings, and, taken as a whole, was not ambiguous, and did not err in giving the peremptory instruction.

Affirmed.