[Civ. No. 4554. First Appellate District, Division Two.—July 25, 1923.]

## O. D. LYON, Respondent, v. J. H. FAIRWEATHER et al., Appellants.

[1] LIBEL—CONSTRUCTION OF ARTICLE AS WHOLE—IDENTITY OF PLAINTIFF—INFERENCES—JUDGMENT—APPEAL.—In construing an alleged libelous article, the entire article is to be read as one written instrument, or considered as one transaction and construed accordingly; and in this action to recover damages for an alleged libel, although the plaintiff was not named in any one of the paragraphs containing the libelous statements, it was patent that a reasonable person, upon reading the entire article, might reasonably draw the inference that, among others, the plaintiff was included as one of the persons referred to in the article, and the trial court having drawn such inference, that conclusion was conclusive on appeal.

[2] ID.—MEANING OF AMBIGUOUS LANGUAGE—CONSTRUCTION BY TRIAL COURT—APPEAL.—The meaning of the language of the publication having been ambiguous, it was the duty of the trial court to decide whether it was privileged, and the trial court having rendered judgment in favor of plaintiff, the appellate court was bound to assume, in support of such judgment, that the trial court so construed the language of the article as to resolve the ambiguity in favor of plaintiff.

[3] ID.—PRIVILEGED PUBLICATIONS—COMMENTS BY WRITER.—The publication which section 47, subdivision 4, of the Civil Code designates as privileged is a fair and true report of the facts; and that statute does not include as privileged facts outside the record or comments by the writer.

[4] ID.—EXCESSIVE DAMAGES—APPEAL.—In an action for damages for an alleged libel, the appellate court cannot say that the amount of the verdict was excessive where there is nothing in the amount of the verdict, or in the record, to show that there was a particle of passion or prejudice on the part of the trial court.

APPEAL from a judgment of the Superior Court of Fresno County. D. A. Cashin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Harris & Hayhurst for Appellants.

Mark H. Edwards and Andrew R. Schottky for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover damages for an alleged libel. The defendants answered and a trial was had in the lower court, the judge thereof sitting without a jury. The plaintiff was awarded damages in the sum of $750, and from the judgment the defendants have appealed.

In his complaint the plaintiff alleged that the defendants published an article in their newspaper, the "Reedley Exponent," an article of and concerning the plaintiff, which the plaintiff alleged to be libelous. In their answer the defendants denied certain of the allegations of the plaintiff's complaint and pleaded affirmatively that the article in question was a fair and truthful report of a judicial proceeding. The trial court made findings that the defendants were not guilty of malice in fact, but otherwise the findings were in favor of the plaintiff.

Some time prior to the month of October, 1919, the Reedley Telephone Company had made application to the Railroad Commission for an increase of its rates. A hearing on that application was about to be had and those persons who were opposed to the granting of the application were desiring to obtain a continuance. In their showing for that purpose they obtained the affidavit of Robert Chance. Afterward a charge of perjury was presented against Chance. A preliminary examination was had on the charge, and thereafter

4. Excessiveness of verdict in action for libel, notes, **Ann. Cas.** 1913B, 700; **Ann. Cas.** 1916D, 1175.

the article in question was published in the "Reedley Exponent." As stated above, the defendants contended in the trial below, and now contend, that the publication was a fair and true report without malice, in a public journal, of a judicial proceeding, and that it is privileged. (Civ. Code, sec. 47, subd. 4.) The article is quite long and there is no necessity of setting it forth *in extenso*. The appellants in their brief commence with the first line of the article and proceed to the end, arguing as they go that each particular statement is an accurate report of the judicial proceeding, that is, the preliminary examination. The respondent takes the same course and argues that it is not a fair report. At this point we pause to remark that the whole of the article down to the fourth paragraph from the end seems to be a fair and true report of the judicial proceeding as the defendants claim for it. The general tenor of the first part of the article is to the effect that Chance had formerly worked for the Reedley Telephone Company, and also for the Reedley Electrical Company; that for the purpose of making the showing before the Railroad Commission, the plaintiff and others sought to get an affidavit from Chance; that Chance at that time was residing at a distant point, and when he heard that he was wanted he went to Reedley and upon arriving there he was met by the plaintiff and others, who greeted him as a long lost friend; that an affidavit was prepared; that the affiant did not read the affidavit but executed the same; that the affidavit was false and in short was an act of perjury. The article then continues with these closing paragraphs:

"As one listened to the story of Chance there came upon them a feeling that he had been sinned against more than he had sinned and that he had been made use of by others.

"In this case, however, they misjudged the character of the man they intended to injure, with the result that the injury to character and integrity is not upon the man who Chance was influenced to attack but upon the plotters themselves.

"Good may come out of the vicious attack upon Terkel, however, for it will probably stop some of the vicious attacks upon respectable people of Reedley by an element that has for years made such a course a political and business weapon.

"In court to-day Chance practically repeated the story told to Deputy District Attorney Hayes."

[1] In the paragraphs which we have quoted it will be noted that the plaintiff is not named, but the entire article, of course, is to be read as one written instrument, or considered as one transaction and construed accordingly. (25 Cyc. 501; *Bradley* v. *Gardner,* 10 Cal. 371; *Newby* v. *Times-Mirror Co.,* 46 Cal. App. 110 [188 Pac. 1008, 1015].) Although the plaintiff is not named in any one of the last four paragraphs, it is patent, if one reads the entire article, that a reasonable person might reasonably draw the inference that, among others, the plaintiff was included as one of the persons referred to in the article. The power to draw inferences from the facts rested with the jury, or in this case, with the trial court sitting without a jury. Under these circumstances this court has no power to substitute its inference for the inference drawn by the trial court.

[2] In the third paragraph quoted the article stated, "Good may come out of the vicious attack upon Terkel, however, for it will probably stop some of the vicious attacks upon respectable people of Reedley that has for years made such a course a political and business weapon." The intent of the expression "such a course" is ambiguous. The article is susceptible of being construed "such a course of suborning perjury, a political and business weapon," or of being construed "such a course of vicious attacks, a political and business weapon." The question of the meaning of the language of the publication was in the first instance for the court. If such a meaning was not ambiguous, then it was the duty of the court to decide whether it was privileged. If the meaning was ambiguous, the proper practice was to submit the question to the jury. (*Caylor* v. *Nunn* (Tex. Civ.), 235 S. W. 264, 267.) As this case was tried by the trial court sitting without a jury, we must assume, in support of the judgment, that the trial court so construed the language of the article as to resolve the ambiguity mentioned in favor of the plaintiff.

[3] The publication which the statute designates as privileged is a fair and true report of the facts; the statute does not include as privileged facts outside the record or comments by the writer. If the article in question had left out the last four paragraphs it would then have come within the privilege as defined in the statute, but one needs only to read the last four paragraphs to note at once that said para-

graphs are matters of comment and do not purport to state any fact or facts developed in the judicial proceeding which the article purports to report.

[4] The appellants complain as to the amount of the verdict. There is nothing in the amount of the verdict, or in the record, to show that there was a particle of passion or prejudice on the part of the trial court. This court may not say, therefore, that the verdict was excessive.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.