[Civ. No. 10908. Second Appellate District, Division Two.—June 27, 1936.]

W. L. POLLARD, Appellant, v. FOREST LAWN MEMORIAL PARK ASSOCIATION, INC., et al., Respondents.

Don M. Kitzmiller and F. D. R. Moote for Appellant.

Call & Murphey, Robert B. Murphey, Alex W. Davis, Hill, Morgan & Bledsoe and Vincent Morgan for Respondents.

McCOMB, J., *pro tem.*—Plaintiff appeals from a judgment in favor of defendant after the trial court sustained a demurrer without leave to amend to plaintiff's complaint, which alleged that defendants had libeled plaintiff.

The complaint alleged that the defendant Forest Lawn Memorial Park Association, Inc., had caused to be published as an advertisement in various newspapers in Los Angeles County, California, an affidavit executed and filed by defendant Ella Summers in an action pending in the Superior Court of Los Angeles County, which affidavit was as follows:

"State of California
County of Los Angeles $\Big\}$ ss

"I, Ella Summers, being first duly sworn, depose and say: That I am the plaintiff in that certain suit brought against Forest Lawn Memorial Park Association, Inc., Forest Lawn Cemetery Association and Forest Lawn Company, in the Superior Court of Los Angeles County; I was not only influenced to bring this suit against the Forest Lawn Companies but was paid money for the use of my name in bringing the suit and was promised more money.

"I consented to the suit being brought in my name because Dave Malloy, a funeral Director, asked me to do it on behalf of some funeral directors who were interested in preventing the operation of a Mortuary in Forest Lawn Memorial Park; Mr. Malloy, Mr. Wood, Mr. Pollard and Mr. Kurland told me they wanted to put the Forest Lawn Mortuary out of business and I would be helping Mr. Malloy if I would sign the complaint; they also promised me that I probably would not have to testify in Court at all and that if I did have to testify all I would have to say is that my husband is buried in Forest Lawn, and that I own the Lot.

"They also promised me that they would pay all expenses if I would let them use my name; I was told that other people were being paid by some funeral directors for bringing this kind of suit against the Forest Lawn Companies, and that I might as well get some of the money.

"I have spent no money on the suit and have been paid so far seventy-five dollars; the first payment of twenty-five dollars was given to me by Dave Malloy and the second payment of fifty dollars was given to me by Dave Malloy which he got from Mr. Wood in my presence; I was told that the reason the money was paid to me by Dave Malloy was so that I could say that I had not been paid anything by Wood, Pollard or the Citizens' Betterment League; Mr. Wood told me that he was paying the money out of his own pocket but would get it back from the Citizens' Betterment League; Mr. Wood, who I was told was the head of the Citizens' Betterment League, recently promised to pay me ten dollars a week for me to live on while the suit was pending.

"I am perfectly satisfied with conditions in Forest Lawn Cemetery; I think it is beautiful and I do not care whether they have a Mortuary in the Cemetery or not; I think that the Mortuary is a benefit to lot owners in Forest Lawn, and I have not been injured and will not be injured in any way by the operation of the Mortuary in Forest Lawn, and consent to its continued operation.

"The only reason I let my name be used in the suit was because I was paid some money for it and promised some money. I have been having a hard time to get along and needed the money which they promised me.

"I never employed Mr. Pollard to act as my attorney in this suit; I never paid him anything or promised to pay him anything, and he told me the Citizens' Betterment League was going to pay for it; I was taken up to Mr. Pollard's office by Mr. Malloy and signed some papers in the suit which had already been prepared.

"I realize now that I made a mistake in allowing the Funeral Directors who were interested in the bringing of this suit to use my name; I am not going to appear in Court or testify in the suit and I intend to pay them back the money which they paid me; I do not want to go on with this suit and want it dismissed; and I have signed instructions for the suit to be dismissed.

"I am signing this affidavit voluntarily in order to correct an injustice.

"ELLA SUMMERS

"Subscribed and sworn to before me this 2nd day of October, 1934.

"(Seal)                    L. THURSTON HARSHMAN

"*Notary Public in and for the County of Los Angeles, State of California*

"My Commission expires May 27, 1938"

In addition the advertisement included the following statement:

"In Explanation.

"This affidavit made by Mrs. Ella Summers was filed November 1 in the Superior Court in connection with the suit brought in her name which sought to enjoin the operation of an undertaking establishment in Forest Lawn Memorial Park. As stated in her affidavit, Mrs. Summers has signed instructions that the suit be dismissed. This document, we believe, fully explains certain mysterious attacks against Forest Lawn Memorial Park.

"The Citizens' Betterment League referred to in the affidavit is an organization made up of funeral directors, casket manufacturers and allied commercial interests.

"This affidavit is printed here in full so that you—the lot owners and friends of Forest Lawn—may know the facts of the situation.

"FOREST LAWN MEMORIAL PARK ASSOCIATION, INC.,
"Glendale—California."

By way of innuendo it was alleged that the defendants intended to convey the meaning that plaintiff, an attorney at law, had been guilty of the following acts:

1. Filed a complaint for a client although he had not been requested so to do;

2. Misrepresented to Ella Summers the nature and kind of action which was brought on her behalf;

3. Took advantage of Ella Summers in an unscrupulous manner, knowing that she did not realize what she was doing when she filed the complaint;

4. Promised Ella Summers that appellants would pay all expenses of the suit;

5. Entered into a conspiracy with certain individuals to attack Forest Lawn by some unfair and underhanded means.

The two questions presented for our determination are these:

*First: Considering the publication as a whole, was it fairly susceptible of the interpretation placed thereon by the innuendoes alleged by plaintiff?*

*Second: Was it error to sustain the demurrer to the complaint without leave to amend?*

As to the first question it is the duty of the trial court to determine whether the language used in the alleged libelous publication is capable of the defamatory meaning claimed for it by the plaintiff (16 Cal. Jur. 121; *Lyon* v. *Fairweather,* 63 Cal. App. 194, 196 [218 Pac. 477]; *Mellen* v. *Times-Mirror Co.,* 167 Cal. 587, 593 [140 Pac. 277, Ann. Cas. 1915C, 766]) and the innuendo cannot ascribe a meaning to the defamatory matter other or broader than the words themselves naturally bear. It cannot add to nor enlarge nor change the sense of the published words. (*Grand* v. *Dreyfus,* 122 Cal. 58, 61 [54 Pac. 389]; *Bates* v. *Campbell,* 213 Cal. 438, 442 [2 Pac. (2d) 383]; *Pyper* v. *Jennings,* 47 Cal. App. 623, 635 [191 Pac. 565].)

Reading the published advertisement as a whole, the only interpretation of which it is fairly susceptible is "that Mr. Malloy, a funeral director and friend of Mrs. Summers, asked her to permit a suit to be brought in her name on behalf of some funeral directors to prevent the operation of a mortuary in Forest Lawn. She was paid money by Mr. Malloy and Mr. Wood, and was recently promised additional money by Mr. Wood, and she permitted her name to be used because of these payments and the promise of additional payments by Mr. Wood, who was to get it back from the Citizens Betterment League. Mr. Malloy, Mr. Wood, Mr. Pollard and Mr. Kurland told her that the funeral directors wanted to put the mortuary out of business, and promised her that she would probably not have to testify in court, and that the Citizens' Betterment League would pay for the suit. She was taken to Mr. Pollard's office by Mr. Malloy and signed papers in the suit which had already been prepared."

In view of the only reasonable interpretation which can be placed upon the publication, it is readily seen that it does not support the libelous innuendoes alleged by plaintiff, and the trial court properly sustained the demurrer.

As to the second question, plaintiff cannot complain of the trial court's failure to grant leave to amend at the time the demurrer was sustained, for the reason that the record discloses that plaintiff did not request leave to amend at that time. (*Duvall* v. *White,* 46 Cal. App. 305, 307 [189 Pac. 324].)

At a subsequent period plaintiff did request leave of the court to file an amended complaint, which request was denied. This ruling was correct, as the allegations in the proposed amended complaint were substantially the same as those in the original complaint and it was vulnerable to a general demurrer on the ground that it did not state a cause of action for the reason set forth above. (*Stewart* v. *Douglass,* 148 Cal. 511, 512 [83 Pac. 699].)

The judgment is affirmed.

Crail, P. J., and Wood, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 24, 1936.