[Civ. No. 12583. Second Dist., Div. One. Oct. 22, 1941.]

MARK KELLY, Appellant, v. LOU DARO et al., Defendants; JACK DARO, Respondent.

James P. Fitzpatrick and Clyde F. Murphy for Appellant.

Irving S. Baltimore and George Baltimore for Respondent.

YORK, P. J.—This is an appeal from a judgment of dismissal in an action for libel, after a general and special demurrer to the complaint had been sustained without leave to amend, upon the grounds that "the alleged testimony before a committee of the California State Legislature therein referred to was of a privileged character, and the alleged 1935 and/or 1936 publication appearing on the face of the complaint to be outlawed."

The complaint herein reveals that appellant, Mark Kelly, "for a period of approximately twenty-two years prior to the month of April, 1939 . . . had devoted his entire time, energy, and talent to the profession of attending and reporting athletic events and contests of all kinds," thereby achieving a position of national prominence in his chosen profession and the reputation of being a fearless and unbiased critic in the world of sports. During the years immediately preceding April, 1939, appellant was the writer of a daily featured article in a Los Angeles newspaper under the title "What Nots by Mark Kelly," and was particularly directing his critical attention to the field of professional wrestling in the State of California, frequently announcing in print his individual conviction that wrestling as a sport was a "joke."

During this period, the defendants Daro were engaged in the business of managing and promoting wrestlers and wrestling matches and were co-owners of a lessee's interest in a lease upon Olympic Auditorium in the city of Los Angeles. It is alleged that said defendants, early in the year 1936, directed their bookkeeper, Helen Copin, to make an entry in the books of the ostensible copartnership to the effect that in 1935 defendant Lou Daro had paid to appellant the sum of $11,211.51, and that such entry was intended by the defendants to mean that "although the plaintiff herein was employed exclusively on matters of sports by the Los Angeles Examiner to report, write, edit and columnize his unbiased opinions upon sports and all forms of sport promotion and to criticize impartially and independently all types and forms of amateur and professional athletic contests and to have no interest in or emolument from any sport or any promoter of

sport, the said plaintiff herein had accepted the sum of $11,-211.51 in cash from the defendant Lou Daro as a 'pay-off' or bribe or emolument in return for reporting, writing, editorializing and columnizing wrestling events and wrestling promotion activities in a manner which should favor and should be partial to wrestling business of the defendants Lou Daro and Jack Daro. . . . ''

During the 1939 session of the California State Legislature, pursuant to House Resolution No. 71, the assembly appointed a committee of three members to investigate, and for that purpose to conduct hearings and take evidence relative to the activities of the State Athletic Commission. The first hearing of the committee was conducted at Sacramento on April 20, 1939, at which time the respondent Jack Daro and his employee, Helen Copin, were subpoenaed as witnesses and testified by reading from the books of the copartnership (which were produced at the hearing under a subpoena *duces tecum*), the entry heretofore referred to, to-wit, that in the year 1935, appellant Mark Kelly had accepted and received from defendant Lou Daro the sum of $11,211.51 as a bribe or ''pay-off.''

It is then alleged that the original entry made and published in 1936 and republished on April 20, 1939, before the legislative committee was false, misleading, defamatory, libelous, unprivileged and without legal cause, and exposed appellant to hatred, contempt, ridicule and obloquy, causing him to lose his position with the Los Angeles newspaper, and to suffer grave humiliation and great indignity, all to his damage in the total sum of $775,000.

The complaint further alleged that the defendants Daro knew and intended at the time the original entry was made in 1936 that it should be seen by their own agents and other persons, who would repeat and circulate the same.

Appellant concedes that the statute of limitations has run against an action for libel based upon the original entry (subd. 3, sec. 340, Code Civ. Proc.), but he argues that the instant action is founded upon the republication of the original entry before the legislative committee on April 20, 1939, and that a witness testifying before such committee has only a qualified and not an absolute privilege.

Section 45 of the Civil Code defines libel as ''a false and unprivileged publication by writing, printing, picture, effigy,

or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.''

Section 47 of the same code defines a privileged publication as ''one made—

''1. In the proper discharge of an official duty.

''2. In any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law. . . . ''

In discussing the question of privilege in the case of *People* v. *Faber*, 29 Cal. App. (2d) (Supp.) 751 at 759 [77 Pac. (2d) 921], the court made the following comment: ''In a civil action the privilege extended by the first two subdivisions of section 47 has been held to be absolute and unqualified (*Hale Co.* v. *Lea*, 191 Cal. 202, 205 [215 Pac. 900]) provided the publication is relevant to the official duty involved or to the cause or subject of inquiry. (*Wyatt* v. *Buell*, 47 Cal. 624.) The sort of relevancy required is further defined in *Irwin* v. *Newby*, 102 Cal. App. 110 [282 Pac. 810, 283 Pac. 370]. On the other hand, the forms of privileged communications defined by subdivisions 3, 4 and 5 of section 47, applicable to libel and slander alike, 'are protected by a qualified privilege only; that is, to make the defenses available, the publication and circumstances surrounding it must conform to the conditions laid down in the statute'. (16 Cal. Jur. 67, citing *Longsworth* v. *Curson*, 56 Cal. App. 489 [206 Pac. 779].)''

In 36 Corpus Juris 1260, sec. 239(b), the following statement appears: ''As a general rule, defamatory matter published in the due course of legislative proceedings is absolutely privileged. (*Peterson* v. *Steenerson*, 113 Minn. 87 [129 N. W. 147, 31 L. R. A. (N. S.) 674].) The rule is broad and comprehensive including proceedings in all legislative bodies, whether state or municipal. A member of the legislature is not liable in an action of defamation for words published in the discharge of his official duties, even though made maliciously. . . . But this privilege does not extend to words spoken unofficially, although in the legislative hall and while the legislature is in session. The privilege of a witness appearing before a committee of the legislature in a matter within the jurisdiction of the committee is the same as that of a witness in judicial proceedings. (*Sheppard*

v. *Bryant,* 191 Mass. 591 [78 N. E. 394, 6 Ann. Cas. 802] ; *Wright* v. *Lothrop,* 149 Mass. 385 [21 N. E. 963].) A statement made by a witness in such an examination which is pertinent to the questions and the subject of the examination is absolutely privileged. (*Sheppard* v. *Bryant, supra.*)''

In the Sheppard case it was held that where a witness was subpoenaed, sworn and examined before a legislative committee, appointed to investigate the conditions under which coal was received, supplied and sold in the city of Boston and vicinity, statements made in the course of his examination which were pertinent to the questions and the subject of examination were absolutely privileged. In said cited case, the court, at page 400, quoted from *Wright* v. *Lothrop,* 149 Mass. 385 [21 N. E. 963, 965], as follows: '' 'The examination of witnesses is regulated by the tribunal before which they testify, and if witnesses answer pertinently questions asked them by counsel which are not excluded by the tribunal, or answer pertinently questions asked by the tribunal, they ought to be absolutely protected. It is not the duty of a witness to decide for himself whether the questions asked him under the direction of the tribunal are relevant, as the witness is sworn to tell the whole truth relating to the matter concerning which his testimony is taken; he ought also to be absolutely protected in testifying to any matter which is relevant to the inquiry or which he reasonably believes to be relevant to it. But a witness ought not to be permitted with impunity to volunteer defamatory statements which are irrelevant to the matter of inquiry and which he does not believe to be relevant. This statement of the law, we think, is supported by the decisions in this commonwealth. The English decisions perhaps go somewhat further than this in favor of a witness; certainly they apply the rule liberally for his protection.' ''

In support of his claim that a witness has only a qualified privilege, appellant cites section 590, Restatement of the Law of Torts (Defamation), page 236, to the effect that members only of the Congress or of the legislatures of the various states are absolutely privileged. However, it is stated in *Comment a* of said section 590: ''The privilege, however, is not confined to conduct on the floor of the legislative body. It extends to the work of the legislative committees or subcommittees which are engaged in an investigation or other

work authorized by the legislative body, whether the work is performed while that body is in session or during a recess.''

■ The right to investigate implies the right to take evidence. Consequently, in view of the authorities heretofore cited, a witness must of necessity be protected with respect to defamatory statements made by him which are pertinent to the questions and the subject of the examination.

As stated in 12 A. L. R. 1255: ''Defamatory testimony before a regularly constituted legislative body, or a committee thereof, making a legally authorized investigation, is generally held to be subject to the same rules of privilege as similar testimony in courts of justice. If the testimony is material to the inquiry, or responsive to the question asked by the tribunal, it is generally held to be privileged absolutely in an action for libel or slander. *Terry* v. *Fellows*, (1869) 21 La. Ann. 375; *Wright* v. *Lothrop*, (1889) 149 Mass. 385, 21 N. E. 963; *Sheppard* v. *Bryant*, (1906) 191 Mass. 561, 78 N. E. 394, 6 Ann. Cas. 802. See, also, *McLaughlin* v. *Charles*, (1891) 60 Hun, 239, 14 N. Y. Supp. 608.''

House (or Assembly) Resolution No. 71, quoted at length in the first amended complaint herein, created a special assembly committee on athletic affairs to consist of three members, authorized and directed ''to make a thorough and complete study of, and investigation into all matters and things relating to boxing and wrestling in this State, and the administration of the laws pertaining thereto''; authorized said committee to hold public hearings at any place in the State and ''to do any and all things necessary to make a full and complete investigation of the matters herein referred to, and to require the production of books, agreements, documents, reports, accounts, and papers of every kind, to make its own rules of procedure, and to issue subpoenas to compel the attendance of witnesses and to procure testimony . . . the said committee is hereby given leave to sit during the sessions of the Legislature and to report back to the Assembly its recommendations as soon after the adoption of this resolution as possible. . . . ''

As heretofore stated, respondent Jack Daro and his employee, Helen Copin, were subpoenaed as witnesses, and testified from the books which were kept by defendants and which were produced under a subpoena *duces tecum*. The questions

asked and the answers given thereto were pertinent to the inquiry relating to boxing and wrestling.

Since the complaint shows upon its face that the original libel is barred by the provisions of subdivision 3, section 340, Code of Civil Procedure, and that the alleged republication thereof before the legislative investigating committee was absolutely privileged, the demurrer was properly sustained without leave to amend.

For the reasons stated, the judgment of dismissal is affirmed.

Doran, J., and White, J., concurred.