[Civ. No. 26991. First Dist., Div. Two. Sept. 21, 1970.]

WILLIAM D. HANDELSMAN, Plaintiff and Appellant, v.
SAN FRANCISCO CHRONICLE, Defendant and Respondent.

COUNSEL

L. Charles Gay for Plaintiff and Appellant.

Cooper, White & Cooper, Sheldon G. Cooper, Charles W. Kenady and Alan L. Fox for Defendant and Respondent.

OPINION

**TAYLOR, J.**—Plaintiff, William D. Handelsman, appeals from a judgment entered on a special jury verdict in favor of defendant, San Francisco Chronicle, in a libel action. Plaintiff contends that: 1) the evidence does not support the judgment that the publication was within the absolute

privilege of Civil Code section 47, subdivision 4; 2) the trial court erred in submitting to the jury the question of the application of the privilege; and 3) the trial court committed prejudicial error in refusing his proffered instructions on libel per se.

The basic facts are not in dispute. On May 14, 1966, the Chronicle published an article relating to a complaint filed several days earlier in the Superior Court of San Mateo County against plaintiff and several others, who were also officers of the Military Sea Transportation Union (hereafter MSTU), a local of the Seafarers' International Union of North America (hereafter SIU). The San Mateo complaint alleged two causes of action against plaintiff; the first for conversion of certain moneys owned by the MSTU, and the other for expending money for entertainment, organization and travel without rendering any accounting for it to the MSTU. The entire article is set forth in the footnote below, with the portions particularly complained of italicized.[1]

The record indicates that immediately after the filing of the San Mateo complaint, one of the Chronicle courthouse reporters telephoned the city desk to report its contents. The call was transferred to the paper's labor editor, Richard Meister, who, in this capacity, had written about a thousand stories. Meister had the responsibility of determining the newsworthiness of labor events and to rewrite and report labor stories of interest to the general public. On the basis of this experience, Meister decided that the

---

[1]"MARITIME
"UNIONS SUE—
" 'Dues Theft'

"Five former organizers for the Military Sea Transportation Union were sued in San Mateo County Superior Court yesterday for allegedly having *'despoiled'* the union treasury.

"Officials of the union and its parent Seafarers International Union charged the men with *outright theft* of $2500 in dues they collected and with refusing to account for at least $26,000 in other union money which they handled.

"The suit, demanding return of the money plus at least $322,000 in damages, was filed against William D. Handelsman, William T. Jenkins, Leonard Hemphill, Glenn Shafer, Elmer Comer and ten 'John Does,' to be named later.

"The unions charged that the men 'conspired together' between January and July of 1965 to hold back for their own use $2500 of the $5-a-month dues they were collecting for the union from crew members on Military Sea Transportation Service vessels here and in other Pacific Coast ports.

"In addition, they charge, the men have refused to account for $26,000 in union funds provided them for entertaining, organizing and paying travel expenses in connection with their duties.

"The unions also singled out Handelsman for assertedly having *'despoiled* the treasury . . . by spending additional funds . . . for personal use and for personal wants and needs' that were not authorized by them.

"The matter came to light, they said, after an independent audit of the union's treasury in December, 1964." (Italics added.)

complaint filed against plaintiff was of general interest to the public and, after having the complaint read to him over the telephone, wrote the article which is the subject of this action.

Meister indicated that he translated the legal language of the complaint into lay terms, and that in these terms, "conversion" was equivalent to "theft." On cross-examination, Meister stated that he knew there was a difference between civil and criminal conversion and theft as he had studied these matters in college, but did not think that ordinary laymen would understand and appreciate the technical legal differences between the terms. Meister's testimony that his report of the San Mateo complaint was a normal summary, and was in the style commonly practiced by his profession, was substantiated by an expert.

The matter was submitted to the jury with a special verdict that included the question: "Was the article published by defendant a substantially fair and true report of the lawsuit filed against plaintiff?" The jury answered this question in the affirmative and judgment was entered thereon. Accordingly, the judgment here rests solely on the defense of privilege. The privilege claimed is that of Civil Code section 47, subdivision 4, which provides, in pertinent part, that a privileged publication is one made by "a fair and true report in a public journal" of a judicial proceeding.

█ Plaintiff argues that the trial court erred in letting the jury decide whether the newspaper article containing the term "theft" was a fair and true report of the substance of the complaint for civil conversion. Plaintiff claims that this question was one of law for the court and, on the facts in this case, should have been determined adversely to the newspaper. The applicable law in California is that whether or not *a privileged occasion exists* is *for the court* to decide, while the effect produced by the particular words used in an article and *the fairness of the report* is a question of fact *for the jury* (*Williams* v. *Daily Review, Inc.,* 236 Cal. App.2d 405, 418-419 [46 Cal.Rptr. 135]). This was the procedure followed in the instant case. The authorities cited by plaintiff concern situations where the matter was solely one of law because of the procedural posture of the case (e.g., summary judgment or a demurrer) and they have no relevance here.

█ Plaintiff next contends that as a matter of law the article could not be a fair and true report of the San Mateo complaint as the article did not use the verbatim language of the complaint. █ The well recognized rule in this state, as elsewhere, is that the alleged defamatory matter must only be substantially in accord with the report in order to be entitled to the privilege of Civil Code section 47, subdivision 4 (*Hayward* v. *Watsonville Register-Pajaronian & Sun,* 265 Cal.App.2d 255 [71 Cal.

Rptr. 295]; *Kurata* v. *Los Angeles News Publishing Co.,* 4 Cal.App.2d 224 [40 P.2d 520]; *Mortensen* v. *Los Angeles Examiner,* 112 Cal.App. 194 [296 P. 927]). As we indicated in the *Watsonville Register* case, *supra,* the reason for the rule is that an exact reproduction could do as much harm to a plaintiff as the reporter's interpretation. As stated in *Kurata, supra,* at pages 227 and 228: "It is well settled that a defendant is not required in an action of libel to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting of the libelous charge be justified, and if the gist of the charge be established by the evidence the defendant has made his case. . . . 'If the substantial imputations be proved true, a slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently than the actual truth would.' "

■ Thus, the publication is to be measured by the natural and probable effect it would have on the mind of the average reader (*MacLeod* v. *Tribune Publishing Co.,* 52 Cal.2d 536, 547 [343 P.2d 36]; *Megarry* v. *Norton,* 137 Cal.App.2d 581 [290 P.2d 571]). The standard of interpretation to be used in testing alleged defamatory language is how those in the community where the matter was published would reasonably understand it (*Hubbard* v. *Associated Press* (4th Cir. 1941) 123 F.2d 864). In determining whether the report was fair and true, the article must be regarded from the standpoint of persons whose function is to give the public a fair report of what has taken place. The report is not to be judged by the standard of accuracy that would be adopted if it were the report of a professional law reporter or a trained lawyer (*Spradlin's Market, Inc.* v. *Springfield Newspapers, Inc.* (Mo. 1966) 398 S.W.2d 859, 866).

■ There is no authority for plaintiff's contention that a newspaper article reporting a judicial proceeding must indicate every possible interpretation of every word used in a complaint or other legal document. More particularly, plaintiff argues that while the San Mateo complaint involved a civil action, defendant's article, by use of the term "outright theft," has unfairly limited the term "conversion" solely to its criminal import. However, while one may convert property without committing a crime, it does not follow that a civil action for conversion cannot be grounded on criminal activity. The San Mateo complaint charged plaintiff and others with conspiring together to convert and of actually converting *to their own use* certain monies owned by the union, with oppression, *fraud* and malice toward the unions and their members, and plaintiff with "despoiling" the treasury by spending union funds *for his personal use* and his personal wants and needs not authorized by the unions. Penal

Code section 484 defines theft as follows: "Every person . . . who shall fraudulently appropriate property which has been entrusted to him . . . is guilty of theft." Thus, although the San Mateo action is civil in nature, the use of the criminal term "theft" in describing the facts alleged in the complaint might well be within the ambit of fair reporting. At least, the court is not inclined to hold that the reporting was not fair as a matter of law.

Plaintiff next complains that the trial court erred in refusing to the jury his proffered instructions 7 and 9 that the term "theft" was libelous per se. The record indicates that the trial court orally instructed the jury that if the article was not a substantially fair and true report of the complaint, then plaintiff was entitled at least to his special damages. Furthermore, one of the special verdict forms agreed upon by the parties and taken into the jury room indicated to the jury in writing that it should award plaintiff his special damages as proved, if the article was not a fair and true report. Both the forms of the special verdict and the court's instructions focused the jury's attention on the central issue of whether the article was a fair and true report. Accordingly, in this context, plaintiff's proposed instructions 7 and 9 were irrelevant and incomplete. These instructions were properly rejected by the trial court on the ground that the matter was adequately and clearly covered by the form of the special verdict and the court's instructions.

Plaintiff complains that the trial court erred in instructing the jury to consider the entire article as well as the entire San Mateo complaint. Plaintiff attempts to argue that because his libel action is purportedly directed only to the cause of action for conversion, the court should have instructed the jury to consider only the first portion of the article and the first cause of action of the San Mateo complaint. The only authority cited by plaintiff, *Paducah Newspapers* v. *Bratcher* (1938) 274 Ky. 220 [118 S.W.2d 178], is not applicable, as there the court held only that the actionable language, which was libel per se, should be submitted to the jury on retrial. The well recognized principle that an alleged libelous article must be considered in its entirety and cannot be divided into separate units can also be applied to the consideration of the complaint or other judicial documents reported on (cf. *Stevens* v. *Storke,* 191 Cal. 329 [216 P. 371]; *Bettner* v. *Holt,* 70 Cal. 270 [11 P. 713]; *Lyon* v. *Fairweather,* 63 Cal.App. 194 [218 P. 477]).

Plaintiff next complains that the court erred in defining conversion according to Webster's Collegiate Dictionary definition[2] instead of the

---

[2] "To convert something is to divert it, to apply a different use."

more technical legally phrased instruction he submitted.[3] In view of the issue before the jury the trial court's instruction was proper. Furthermore, the instruction proposed by plaintiff was contrary to the evidence. The San Mateo complaint clearly indicated that the withholding of union funds charged was not the result of ignorance but rather oppression, fraud and malice. Thus, the latter portion of plaintiff's proposed instruction defining some mental elements inherent in conversion but not present here could have been potentially prejudicial and confusing to the jury.

Plaintiff next complains that the court erred in refusing his requested instruction No. 12, which read as follows: "A report of a judicial proceeding, in order to be privileged, must not contain any false statements of fact, or any garbled or one-sided report or defamatory observations or comment. It must be accurate and fair. It should not be so edited and deleted as to misrepresent the facts and thus be misleading. The report need not be exhaustive or complete, but it is necessary that nothing be omitted so as to convey an erroneous impression to those who read it. It should not include discreditable matter and fail to publish exculpatory matter."

The record, however, indicates that the court gave the substantially similar instruction proposed by plaintiff, No. 12-B, which reads as follows: "A publication need not be untrue in every detail to be actionable. It is sufficient if the libelous imputation therein is substantially untrue in so far as the gist or sting of the defamatory matter is concerned." The instruction given was an accurate statement of the law and not error.

The judgment is affirmed.

Shoemaker, P. J., and David, J.,* concurred.

---

[3]"You are instructed that a conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.

"Neither good nor bad faith, neither care nor negligence, neither knowledge nor ignorance, are the gist of an action of conversion."

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.