[Civ. No. 17157. Third Dist. Nov. 8, 1978.]

MILO CONKLIN, Plaintiff and Appellant, v.
ROBERT L. SLOSS et al., Defendants and Respondents.

COUNSEL

Sorensen & Sorensen and Ruth Sorensen for Plaintiff and Appellant.

John P. Baker for Defendants and Respondents.

OPINION

**PUGLIA, P. J.**—Plaintiff, Milo Conklin, appeals from a judgment of dismissal entered after the trial court sustained, without leave to amend, defendants' demurrer to plaintiff's amended complaint for damages. This appeal raises the question whether the complaint states a cause of action for the tort of invasion of privacy. We hold that it does and reverse the judgment.

The material allegations of the amended complaint in summary recite that plaintiff is, and at all material times was, a resident of Cedarville, California, and a meat cutter by occupation; defendants are individuals doing business as the Modoc County Record, a weekly newspaper with its principle place of business in Alturas, California; on June 19, 1975, defendants, without privilege and without plaintiff's consent, published under the caption, "Twenty Years Ago Today In Modoc County," the statement, "MILO CONKLIN has been charged with the murder of his brother-in-law, Louis Blodgett, in Cedarville Sunday;" the statement is true; 20 years previously, plaintiff had been tried for and convicted of the murder of Louis Blodgett; he subsequently served a prison sentence, completed parole, remarried and fathered two children, and rehabilitated himself, assuming "a place in respectable society with many friends and family members who were unaware of the incidents of his earlier life." The amended complaint further alleges that as a proximate result of the publication plaintiff's friends and acquaintances learned for the first time of his unsavory past and abandoned him, exposing him and his family to contempt and ridicule and causing them mental anguish, embarrassment, and humiliation. Plaintiff claims general damages, alleges that defendants' conduct was "willful, deliberate, and malicious," and prays for exemplary damages.

In a second cause of action plaintiff alleges that defendants' acts constituted a negligent invasion of his privacy for which he seeks both compensatory and exemplary damages, alleging that the negligent acts of

the defendants "were done so recklessly and heedlessly that they amount to malice."

Defendants demurred on the ground that the amended complaint discloses the existence of privilege under Civil Code section 47, subdivision 4.

## I.

In *Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1], plaintiff, a rehabilitated felon, sued when, 11 years after he had hijacked a truck, the defendant Reader's Digest published an article on truck hijacking; the article contained a sentence which mentioned plaintiff's name and detailed the facts of his crime. Plaintiff alleged publication of the facts of the crime and his identity as perpetrator caused his new family and friends to become aware of his unsavory past and consequently to scorn and abandon him, exposing him to contempt and ridicule. On appeal from judgment of dismissal after defendant's demurrer had been sustained the Supreme Court held plaintiff had stated a cause of action for invasion of privacy. The court drew a distinction between publication of facts about recent crimes and those concerning crimes long past. Because of the important social interests served by publication of recent events, truthful reports of recent crimes and the names of suspects or offenders were held to be generally protected by the First Amendment. (4 Cal.3d at p. 537.) In the case of long past crimes, however, a distinction was drawn between the facts of the crime and the *identity of the actor*. Facts of long past crimes generally retain their newsworthy (and hence protected) character, the court held, for largely the same reasons that publications of current crimes and suspects' identities are deemed newsworthy. In contrast, however, ". . . identification of the *actor* in reports of long past crimes usually serves little independent public purpose. Once legal proceedings have terminated, and a suspect or offender has been released, identification of the individual will not usually aid the administration of justice. Identification will no longer serve to bring forth witnesses or obtain succor for victims. Unless the individual has reattracted the public eye to himself in some independent fashion, the only public 'interest' that would usually be served is that of curiosity.

"There may be times, of course, when an event involving private citizens may be so unique as to capture the imagination of all. In such cases—e.g., the behavior of the passengers on the sinking *Titanic,* the

heroism of Nathan Hale, the horror of the Saint Valentine's Day Massacre—purely private individuals may by an accident of history lose their privacy regarding that incident for all time. There need be no 'reattraction' of the public eye because the public interest never wavered. An individual whose name is fixed in the public's memory, such as that of the political assassin, never becomes an anonymous member of the community again. *But in each case it is for the trier of fact to determine whether the individual's infamy is such that he has never left the public arena; we cannot do so as a matter of law.*" (Italics added; *Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d at pp. 537-538.) "It would," the court stated, "be a crass legal fiction to assert that a matter once public never becomes private again." (P. 539.) While defendant was entitled to raise its claim of First Amendment privilege as a defense, it could not be said *as a matter of law* that the privilege applied; rather, plaintiff was entitled to have a jury determine whether the publication was constitutionally protected, that is, whether it (1) was newsworthy, and (2) did not reveal facts so offensive as to shock the community's notions of decency. (P. 541.) Even so, before he could prevail, plaintiff would have to persuade the trier of fact to find in his favor on the following issues: ". . . (1) whether plaintiff had become a rehabilitated member of society, (2) whether identifying him as a former criminal would be highly offensive and injurious to the reasonable man, (3) whether defendant published this information with a reckless disregard for its offensiveness, and (4) whether any independent justification for printing plaintiff's identity existed." (*Id.,* at p. 543.)

The allegations in the instant complaint fall within the ambit of the *Briscoe* decision even though, as pointed out by defendants, obvious factual distinctions exist between the two cases. Briscoe committed his crime in Kentucky and thereafter began a new life thousands of miles away in California; his past misdeeds were brought to light in a magazine "published in 13 languages and distributed in 100 nations, with a circulation in California alone of almost 2,000,000 copies." (4 Cal.3d at p. 540.) In contrast, plaintiff murdered his brother-in-law in Cedarville, a small community in a small northern California county; after paying his debt to society he returned to the same small community to resume his life; 20 years later his past crime was resurrected by a report in the defendants' local weekly newspaper.

While a jury might find on the basis of the foregoing facts that plaintiff remains within the public arena of the community in which defendants' newspaper is circulated (a finding necessarily fatal to his recovery) (see

*Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d at p. 538), we may not so decide as a matter of law. Certainly plaintiff has raised an issue of fact in this respect, with the allegation that his new friends and family were unaware of the incidents of his earlier life.

## II.

Defendants relied upon Civil Code section 47, subdivision 4, as the basis for their demurrer in the trial court. The parties assume without discussion that section 47 is available as a defense in actions for invasion of privacy as well as in defamation actions (Prosser on Torts (4th ed. 1971) § 117, pp. 817-818).

Civil Code section 47, subdivision 4, provides that a privileged publication is one made "By a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) of anything said in the course thereof, or (5) of a verified charge or complaint made by any person to a public official, upon which complaint a warrant shall have been issued." Although on its face the provision would appear to apply to the facts of this case, plaintiff urges that subdivision 4 applies only to contemporaneous reports of current events. Since his crime was committed 20 years prior to defendants' publication, plaintiff asserts, the statutory privilege does not apply. In support of this position plaintiff cites *Maidman* v. *Jewish Publications, Inc.* (1960) 54 Cal.2d 643, 653 [7 Cal.Rptr. 617, 355 P.2d 265, 87 A.L.R.2d 439], for the proposition "that in order to invoke the privilege of the statute, the publication [has] to be made in good faith and made contemporaneous with the events reported."

Plaintiff misreads *Maidman,* for there the defendant had attempted to invoke the qualified privilege of Civil Code section 47, subdivision 3. The provisions of subdivision 4 were not raised at all. Moreover the court's comment that the passage of 13 months between the events and defendant's reporting of them was suggestive of a motive other than fair comment on current events, was made with reference to plaintiff's allegation of malice, an allegation necessary to avoid the qualified privilege of subdivision 3. (*Maidman* v. *Jewish Publications, Inc., supra,* 54 Cal.2d at p. 653.) There is nothing in the *Maidman* decision which states or implies that the absolute privilege of Civil Code section 47, subdivision 4, may only be invoked for publications regarding current events.[1]

---

[1]Prior to 1945, subdivision 4 contained the qualification that the publication be "without malice." (Stats. 1873-1874, ch. 612, § 11, p. 184.) Subdivision 5 of Civil Code

Our research has disclosed no case on the point whether the statutory privilege for fair, accurate reports of judicial proceedings extends only to contemporaneous news coverage, as plaintiff argues, or whether it is without temporal limitation. There is no mention of any of the statutory privileges accorded by Civil Code section 47, in *Briscoe.* In those few reported cases which deal directly with Civil Code section 47, subdivision 4, perhaps only by coincidence all the reports complained of involved contemporaneous chroniclings of current events. (See *Handelsman* v. *San Francisco Chronicle* (1970) 11 Cal.App.3d 381, 384-385 [90 Cal.Rptr. 188]; *Hayward* v. *Watsonville Register-Pajaronian and Sun* (1968) 265 Cal.App.2d 255 [71 Cal.Rptr. 295]; *Glenn* v. *Gibson* (1946) 75 Cal.App.2d 649 [171 P.2d 118]; *Kelly* v. *Daro* (1941) 47 Cal.App.2d 418 [118 P.2d 37]; *Kurata* v. *Los Angeles News Pub. Co.* (1935) 4 Cal.App.2d 224 [40 P.2d 520]; and *Mortensen* v. *Los Angeles Examiner* (1931) 112 Cal.App. 194 [296 P. 927].)

However, in *Briscoe,* the Supreme Court declared that the right of a rehabilitated, "non-newsworthy" ex-offender to let his past misdeeds fade into the forgotten pages of history, was paramount to a publisher's First Amendment freedom to publish the true, but "non-newsworthy" fact of plaintiff's identity alongside the facts of his crime. To the extent that the *Briscoe* court may be said to have articulated California public policy in this area, it would appear that questions concerning the scope of the Civil Code section 47, subdivision 4 privilege should be resolved in favor of limiting it to publication of newsworthy items. The authors of the Restatement of Torts section 867, comment c, apparently contemplated this limitation when they wrote about the right to privacy: ". . . [One who] submits himself or his work for public approval . . . must necessarily pay the price of even unwelcome publicity through reports upon his private life and photographic reproductions of himself and his family, unless these are defamatory or exceed the bounds of fair comment. One who unwillingly comes into the public eye because of his

---

section 47 as originally enacted in 1895, contained an identical qualification. (Stats. 1895, ch. 163, § 1, p. 167.) In 1945, reference to malice was deleted from both subdivisions 4 and 5. (Stats. 1945, ch. 1489, § 3, p. 2763.) In *Williams* v. *Daily Review, Inc.* (1965) 236 Cal.App.2d 405, 418 [46 Cal.Rptr. 135], the court held by virtue of the foregoing amendment, that Civil Code section 47, subdivision 5, had become an absolute privilege; accordingly, malice was not an issue in a case involving assertion of the subdivision 5 privilege. By the same reasoning, malice is not an issue in a case involving assertion of the subdivision 4 privilege; accordingly plaintiff's allegations of malice do not affect our determination whether or not defendants may rely upon the privilege embodied in Civil Code section 47, subdivision 4. (See *Handelsman* v. *San Francisco Chronicle* (1970) 11 Cal.App.3d 381, 384-385 [90 Cal.Rptr. 188].)

own fault, as in the case of a criminal, is subject to the same limitations upon his right to be let alone. Community custom achieves the same result with reference to one unjustly charged with crime or the subject of a striking catastrophe. Both groups of persons are the objects of legitimate public interest during a period of time after their conduct or misfortune has brought them to the public attention; *until they have reverted to the lawful and unexciting life led by the great bulk of the community, they are subject to the privileges which publishers have to satisfy the curiosity of the public as to their leaders, heroes, villains and victims.*" (Italics added; Rest., Torts, *supra,* § 867, com. c, p. 400.)

■ We therefore hold that the absolute privilege conferred by Civil Code section 47, subdivision 4, applies only to publications of items that are "newsworthy" as that term is defined in *Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d at pages 540-542.

Plaintiff has alleged facts which, if proven to the trier of fact, would indicate that he has "reverted to the lawful and unexciting life led by the great bulk of the community, . . ." A jury persuaded of this fact might also find that defendants' publication was not "newsworthy" and therefore not within the privilege of Civil Code section 47, subdivision 4. At the very least, we are unable to say as a matter of law that the privilege does or does not apply. It remains for the trier of fact to determine whether plaintiff has left the spotlight of local attention, as he claims, or whether instead defendants have proven facts which establish that the publication was newsworthy and accordingly privileged.

### III.

■ "[I]t is well settled that a general demurrer admits that truth of all material factual allegations in the complaint [citation]; that the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court [citations]; and that plaintiff need only plead facts showing that he may be entitled to some relief [citation]." (*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) As discussed above, plaintiff's complaint alleges facts sufficient to state a cause of action under *Briscoe* v. *Reader's Digest Association, Inc., supra,* 4 Cal.3d 529, for the tort of invasion of privacy. And although the *possible* existence of privilege under Civil Code section 47, subdivision 4, is shown on the face of the complaint, it does not appear as a matter of law.

It follows that defendants' demurrer was improperly sustained. The judgment of dismissal is reversed, and the trial court is directed to vacate its order sustaining defendants' demurrer, and to enter instead an order overruling the demurrer.

Regan, J., and Carr, J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.