[Civ. No. 51605. First Dist., Div. Two. Jan. 18, 1984.]

DAN GREEN, Plaintiff and Appellant, v.
LOUIS CORTEZ et al., Defendants and Respondents.

**COUNSEL**

Michael G. H. Anderson for Plaintiff and Appellant.

Stark, Stewart, Wells & Robinson, Ned Robinson, R. Gordon Baker, Jr., Peter W. Davis, John E. Carne, Judith R. Epstein, Crosby, Heafey, Roach & May, Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw, Mark G. Hyde, Martin & Ryan, Paul K. Verner and Robert G. Werner for Defendants and Respondents.

**OPINION**

**GYEMANT, J.**\*—Plaintiff in this action for libel and slander appeals from a judgment of dismissal entered after the demurrers of several defendants were sustained without leave to amend. The question posed is whether news media defendants herein are liable in damages for accurately reporting defamatory statements spoken by a city councilman at a council meeting where such statements can be proven false and may have been reported either with knowledge of their falsity or in reckless disregard of their truth. We will hold that the media defendants enjoyed an absolute privilege under the "fair and true report" provision of Civil Code section 47, subdivision 4, and will therefore affirm the judgment.

The following pertinent facts are found in the complaint and attached exhibits, which were incorporated therein by reference and were stipulated to be accurate reports of the events in question.

Dan Green, appellant, is a reserve police officer for the City of Newark. On the evening of May 5, 1979, Green arrested a Chicano youth for trespassing. Witnesses to the arrest included Rudy Venegas and Councilman Louis Cortez, defendants below.

During a Newark City Council meeting on May 10th following the arrest, Councilman Cortez complained to other council members that Green had used "undue" and "unnecessary" force, adding that he would "not tolerate

*Assigned by the Chairperson of the Judicial Council.

any abuse by any member of this city's police force" and that "[t]his casts a shadow of shame across the entire police department." He called for an investigation into the arrest, stating, "I would like to see the citizens of Newark be treated with dignity and respect by police officers." Members of the press were present at the meeting. Over the next five days, newspaper articles reporting Cortez' comments at the meeting appeared in the Argus, the San Jose Mercury News and the Oakland Tribune.

After a month-long police department investigation resulted in appellant's exoneration, Cortez branded the investigation "one-sided and distorted." In the face of criticism from other council members concerning his own behavior during the arrest, Cortez spoke out against what he termed "brutal and inhuman behavior by a police officer" and predicted that "a further investigation is very much likely." The Tribune ran two articles about Cortez' reaction to the report, and an article in the Daily Review covered the police investigation report without mention of Cortez' reaction.

At a subsequent city council meeting, Cortez and community supporters unsuccessfully urged the council for an independent and more thorough investigation. The Daily Review and Oakland Tribune each carried articles reporting the meeting.

Television coverage of the foregoing events was broadcast by Teleprompter, Inc., on several dates and was similar in content to the newspaper coverage.

Seeking damages for libel and slander, battery, and for intentional infliction of emotional distress, appellant filed a complaint on September 12, 1979, naming as defendants Cortez, Venegas and all news media entities mentioned above. Before filing, appellant first unsuccessfully sought retractions from the Argus, Oakland Tribune and Daily Review. (Civ. Code, § 48a.)

On March 5, 1980, the trial court sustained the demurrers of all media defendants for failure of the complaint to state a cause of action. Pursuant to appellant's stipulation that he could not amend the complaint to overcome the grounds for the demurrers, the court denied leave to amend and dismissed the action as to the media defendants. Judgment was entered on March 5, and this appeal timely followed on March 17, 1980.

## I. *Parties and Issues on Appeal*

Before addressing the merits of this appeal, it is necessary to clarify which issues and parties are involved.

Cortez has filed a respondent's brief, yet he is not a party to this appeal. The judgment appealed from dismissed the complaint as to the media defendants only and was entered on March 5, 1980. Timely appeal from that judgment was taken on March 17th, purportedly as to "all defendants to the action." Yet, at that time, Cortez' demurrer to the battery cause of action had been overruled, and that cause of action would remain until dismissed upon request of appellant on April 21, 1980. Formal dismissal as to Cortez did not occur until entry of a stipulated judgment on December 8, 1980. At the time when this appeal was taken, there was no appealable judgment as to Cortez; there was only a prior order sustaining his demurrer without leave to amend (a nonappealable order) as to some, but not all, of the causes of action.

Defendant Venegas is similarly not a party here. Not only did the judgment appealed from not concern him, but appellant has taken the precautionary measure of having the appeal ordered dismissed as to Venegas.

Only the media defendants (hereinafter respondents) are parties here, and the issues presented for decision have been narrowed considerably. In his opening brief, appellant expressly abandons the battery and intentional infliction of emotional distress causes of action, leaving only the defamation causes of action.

II. *The Defamatory Publications Were Privileged*

■ Resolution of this appeal hinges on the existence of privilege. Respondents demurred on grounds that publication of the allegedly defamatory matter was absolutely privileged under the First Amendment of the United States Constitution and under California Civil Code section 47, subdivisions 4 and 5. The trial court initially sustained the demurrers with leave to amend, but appellant thereafter stipulated that leave to amend could be denied, stating that he (1) was unable to amend the complaint to allege that any of respondents inaccurately reported any statement of Cortez and (2) intended to pursue his claims against them on appeal "solely on the theory that [they are] liable in damages for accurately reporting statements by elected officials if the statements by those officials can be proven false. . . ." Pursuant to that stipulation, leave to amend was denied and the judgment of dismissal was entered.

Because the demurrers were sustained based on privilege, the precise question for review is, Does the complaint show on its face that the publications were privileged as a matter of law? ■ "The general rule is that a privilege must be pleaded as an affirmative defense. [Citation.] But where the existence of a privilege is revealed on the face of the complaint, it may

be asserted in a demurrer." (*Tschirky* v. *Superior Court* (1981) 124 Cal.App.3d 534, 538 [177 Cal.Rptr. 357].) ■ For purposes of review, we accept as true all factual allegations properly pleaded. (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732]; *Kelly* v. *General Telephone Co.* (1982) 136 Cal.App.3d 278, 284 [186 Cal.Rptr. 184], mod. 136 Cal.App.3d 1063c.)

■ Civil Code section 47 (hereinafter, all section references are to the Civil Code unless otherwise indicated) provides in part: "A privileged publication or broadcast is one made—[¶] 4. By a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) of anything said in the course thereof, . . ."

All necessary elements of the privilege appear clearly from the face of the complaint, the incorporated exhibits (newspaper articles) and the stipulation relied upon in ruling on the demurrers and dismissing the action. The "fair and true report" element, ordinarily a question of fact not resolvable upon demurrer (see *Handelsman* v. *San Francisco Chronicle* (1970) 11 Cal.App.3d 381, 386 [90 Cal.Rptr. 188]) is established as a matter of law by appellant's stipulation that he could not allege inaccurate reporting. Respondents are no doubt "public journals" within the meaning of the statute.[1] The complaint and exhibits, moreover, disclose that the reported statements of Cortez were made in the course of two city council meetings—"legislative" proceedings within the purview of section 47 (*Scott* v. *McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277, 285-286 [112 Cal.Rptr. 609] [§ 47, subd. 2])—and in connection with the police investigation initiated by Cortez' request to the council. ■ A police investigation similar to the one in this case has been held to be an "official proceeding authorized by law" for purposes of section 47, subdivision 2 (*Imig* v. *Ferrar* (1977) 70 Cal.App.3d 48, 54-55 [138 Cal.Rptr. 540]), and there can be no doubt that such an investigation is similarly a "public official proceeding" under subdivision 4.

■ Appellant argues against application of the statutory privilege in two ways. First, he claims that allegations of Cortez having "disrupted" an otherwise "calm" May 5th city council meeting raise an unadmitted issue of fact as to whether the defamatory statements were made by Cortez for a purpose different than that for which the council was convened. In essence, appellant argues that Cortez abused the privileged occasion. ■ Second, he urges that once the police investigation report clearing him of Cortez' charges was made public, respondents were on notice that those charges

---

[1]Appellant does not suggest that Teleprompter, who televised rather than printed the defamatory statements, is not a "public journal" under the section.

were false and had no further privilege to publish them; in other words, the publications were thereafter made with knowledge of their falsity or in reckless disregard of their truth. Both arguments are unavailing.

Addressing the second point first, the privilege accorded by subdivision 4 of section 47 is and has been an absolute one ever since the Legislature in 1945 deleted the qualifying requirement that such privileged publications be made "without malice." Thus, the question of malice does not affect the determination of privilege. (*Conklin* v. *Sloss* (1978) 86 Cal.App.3d 241, 247 [150 Cal.Rptr. 121]; cf. *Williams* v. *Daily Review, Inc.* (1965) 236 Cal.App.2d 405, 417-418 [46 Cal.Rptr. 135].)

■ For his other point, abuse of the privileged occasion, appellant mistakenly relies on the opinion in *Frisk* v. *Merrihew* (1974) 42 Cal.App.3d 319 [116 Cal.Rptr. 781, 85 A.L.R.3d 1128]. There, the question was whether the respondent, a school district superintendent who had uttered slanderous statements against a school teacher (the appellant) during a public school board meeting, enjoyed the absolute privilege of section 47, subdivision 2.[2] (*Id.,* at p. 322.) The case turned on settled case law doctrine establishing that "even though a public officer in the first instance establishes the existence of a privileged occasion for a defamatory publication, he may nevertheless be subject to liability if plaintiff persuades the fact finder that the occasion was abused." (P. 326.) Finding that the facts in *Frisk* posed such a question of fact, this court concluded that it could not be determined, as a matter of law, whether the privileged occasion was abused, and therefore reversed a directed verdict. (Pp. 326-327.)

Nothing in *Frisk* affects the issue of privilege posed here. At issue in *Frisk* was the liability of a *participant* in a public proceeding, not the liability of news media defendants reporting the occasion. There is no suggestion in *Frisk* that local representatives of the press who reported the occasion (42 Cal.App.3d 319, 322) could incur liability for fairly and accurately reporting the event, and the language of section 47, subdivision 4, providing a privilege for "anything" said in the course of a public official proceeding, indicates strongly that there could be no such liability, even if the speaker abused his or her (subd. 2) privilege and thus was personally liable.

■ Accordingly, and in light of the foregoing discussion, we hold that respondents in the present case enjoyed an absolute privilege under section 47, subdivision 4, to publish or broadcast, in a fair and true report, the

---

[2]That subdivision in part provides a privilege for defamatory publications or broadcasts made "[i]n any (1) legislative or (2) judicial proceeding, or (3) in any other official proceeding authorized by law, . . ."

allegedly defamatory statements of Councilman Cortez. This conclusion makes it unnecessary to consider other possible privileges arising under subdivision 5 of section 47 or under the federal Constitution.

Because the existence of the privilege appears as a matter of law from the face of the complaint and because appellant stipulated that he cannot amend the complaint to allege inaccurate reporting, it follows that the trial court correctly sustained respondents' demurrers without leave to amend.

The judgment is affirmed.

Rouse, Acting P. J., and Miller, J., concurred.