SCHIAVONE CONSTRUCTION CO. and
Ronald A. Schiavone, Individually

v.

TIME, INC.

Appeal of SCHIAVONE CONSTRUC-
TION COMPANY and Ronald
A. Schiavone.

No. 83–5663.

United States Court of Appeals,
Third Circuit.

Argued April 23, 1984.

Decided May 25, 1984.

Theodore W. Geiser (argued), Connell, Foley & Geiser, Newark, N.J., for appellants; Thomas S. Cosma, Newark, N.J., of counsel.

Peter G. Banta, (argued), Winne, Banta & Rizzi, Hackensack, N.J., for appellee;

Donald A. Klein, Hackensack N.J., on the brief.

Before ALDISERT, WEIS and RO-SENN, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this appeal from a dismissal of plaintiff-appellants' complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, we are asked to decide whether the complaint made out a sufficient claim for relief against Time, Inc. under New Jersey defamation law. Because we conclude that the district court erred in determining that New Jersey's fair report privilege barred plaintiff-appellants' claim as a matter of law, we reverse the judgment of the district court, 569 F.Supp. 614, and remand for further factual proceedings.

### I.

In January 1981, President Ronald Reagan nominated Raymond J. Donovan, a former labor negotiator for Schiavone Construction Company, to be his Secretary of Labor. The United States Senate confirmed the appointment, relying on information provided to it by the Federal Bureau of Investigation. Later in 1981, in response to allegations that Donovan and Schiavone Construction Company were linked to organized crime, Attorney General William French Smith named Special Prosecutor, Leon A. Silverman, to investigate the matter. On June 26, 1982, Silverman issued his first report, in which he concluded that there was insufficient evidence to support a prosecution of Donovan. New allegations surfaced shortly thereafter, however, and Silverman was forced to reopen the investigation. On August 23, 1982, in an article titled "JURY STILL OUT/Donovan probe is reopened," Time magazine reported:

The FBI faces some tough questioning of its own. The Senate Labor Committee is investigating the bureau's handling of Donovan's confirmation probe 18 months ago. The personal files of FBI Director William Webster, forwarded to the committee last month, reveal that the name of Schiavone appeared several times in the bureau's reports on the 1975 disappearance of former Teamster Boss Jimmy Hoffa. That detail would surely have intrigued both the Senate committee that approved Donovan's nomination in February 1981, and the special prosecutor this year. But neither learned about it until last month.

App. at 6a.

On September 10, 1982, Silverman issued a supplemental report in which he concluded, as he had in the first report, that there was insufficient evidence to support a prosecution of Donovan. He based his conclusion in large part on a memorandum of December 15, 1980 from F.B.I. Director William Webster to then Executive Assistant F.B.I. Director Francis M. Mullen, Jr.—the same memorandum included in the "personal files of F.B.I. Director William Webster" referred to by Time in its article about the investigation. The memorandum describes Webster's response to an inquiry by Edwin Meese on the bureau's Donovan investigation. As quoted in the supplemental report, the Webster memorandum provides:

we had reviewed all our indices and had checked with all field offices and nothing negative had been disclosed. I advised that a company, Chivone (PH), in which he [Donovan] apparently had a very substantial interest, had appeared a number of times in reports in our HOFEX [sic: Hoffex] case, *but that none of these suggested any criminality or organized crime associations.*

App. at 54a–55a (emphasis added). Silverman also based his conclusion about Donovan on a conversation he had with Webster on August 13, 1982 that indicated that the Webster memorandum contained inaccurate information. That conversation, as relayed by Silverman in his supplemental report, provides:

With respect to the December 15, 1980, memorandum, Director Webster stated that the Hoffex reference is incorrect—

that, at the time of the December 12, 1980, communications, the Hoffex files had not been checked. Moreover, the Director stated that files had recently been checked and it was determined that there were no references to [Schiavone Construction Company] therein.

The Director attributed that erroneous Hoffex reference to information which he received from certain subordinates. He was uncertain as to which of the subordinates provided it. He stated that he did not know where he would independently come up with the Hoffex reference since he was not particularly familiar with the details of that file.

App. at 57a.

Believing that the Time magazine article reported false information about Schiavone Construction Company and unfairly summarized the Webster memorandum, Ronald A. Schiavone, an officer and principal shareholder of the company, and Schiavone Construction Company filed a defamation action against Time, Inc. in federal district court. Time moved to dismiss under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief could be granted on the grounds that its article was privileged under New Jersey law as a fair and accurate report of an official action or proceeding. The district court granted the motion, and plaintiffs appealed.

## II.

■ Appellants contend that the district court erred in determining that publication of the Time article was privileged as a matter of law as a fair and accurate report of an official act or proceeding. They argue that (1) a comparison of the Webster memorandum with the Time article raises a question of fact as to the fairness of the article's purported summary of the memorandum and that this question should have been resolved by the jury; (2) the article cannot be classified as a privileged report of an official action or proceeding without proof that Time knew of the Webster memorandum when the article was written; and (3) they should have been given an opportu-

nity to show that, if the privilege applied, Time forfeited the benefits thereof by publishing the article with malice. On review, we must uphold the district court's dismissal of the complaint if it appears beyond doubt that appellants can prove no set of facts in support of their claim that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Polite v. Diehl,* 507 F.2d 119, 124 n. 12 (3d Cir.1974).

## III.

■ As a threshold matter, we must decide which state's substantive law applies to this diversity action. The parties implicitly agree that New Jersey law governs, and the district court applied New Jersey law. Inasmuch as New Jersey has an interest in the outcome of this litigation—the targets of the alleged defamation are a New Jersey resident and a New Jersey corporation and the issue of Time magazine containing the allegedly defamatory article was circulated throughout the state—we have no cause *sua sponte* to challenge that choice of law. *See Medico v. Time, Inc.,* 643 F.2d 134 (3d Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981); *Pierce v. Capital Cities Communications, Inc.,* 576 F.2d 495, 501–02 (3d Cir.), *cert. denied,* 439 U.S. 861, 99 S.Ct. 181, 58 L.Ed.2d 170 (1978). Accordingly, we will examine the sufficiency of the complaint in light of New Jersey law.

## IV.

■ In New Jersey, one who republishes defamatory matter is generally subject to liability as if he or she had originally published it. *Rogers v. Courier Post Co.,* 2 N.J. 393, 66 A.2d 869 (1949); *Barres v. Holt, Rinehart & Winston, Inc.,* 131 N.J. Super. 371, 330 A.2d 38 (Law Div.1974), *aff'd,* 141 N.J.Super. 563, 359 A.2d 501 (App.Div.1974), *aff'd,* 74 N.J. 461, 378 A.2d 1148 (1975) (per curiam); Restatement (Second) of Torts § 578 (1977). Defamatory communications are not actionable, however, if protected by privilege. Among the privileges recognized by New Jersey is the

privilege for publication of a report of an official action or proceeding. This privilege, however, is not absolute; it can be defeated upon a showing that the report was inaccurate, incomplete, or an unfair abridgment of the proceeding. *Coleman v. Newark Morning Ledger Co.*, 29 N.J. 357, 379, 149 A.2d 193, 204–05 (1959); *Reilly v. Gillen*, 176 N.J.Super. 321, 327–28, 423 A.2d 311, 314–15 (App.Div.1980); Restatement (First) and (Second) of Torts § 611 (1938) (1977). Whether the privilege also can be defeated by a showing of malice on the part of the publisher is subject to some debate. Based on § 611 of the original Restatement of Torts, which expressly allows for defeat of the fair report privilege upon proof that the report was "made solely for the purpose of causing harm to the person defamed," New Jersey courts have uniformly held that a showing of malice can defeat the privilege. *See, e.g., Swede v. Passaic Daily News*, 30 N.J. 320, 333, 153 A.2d 36, 43 (1959); *Coleman*, 29 N.J. at 373–79, 149 A.2d at 201–05; *Rogers*, 2 N.J. 393, 66 A.2d 869 (1949); *Nusbaum v. Newark Morning Ledger Co.*, 86 N.J.Super. 132, 137, 206 A.2d 185, 187 (App.Div.1965). Yet since publication of the Restatement (Second) of Torts, which amended § 611 by eliminating the reference to malice as a bar to invocation of the fair report privilege, the New Jersey Supreme Court has not addressed the issue. In two recent decisions handed down subsequent to publication of the Second Restatement, however, the New Jersey Superior Court has expressly allowed a showing of malice on the part of the publisher to defeat the fair report privilege. *See Gabor Molnar v. The Star-Ledger*, 193 N.J.Super. 12, 471 A.2d 1209 (App.Div.1984); *Reilly*, 176 N.J. Super. at 327–28, 423 A.2d at 315. In light of these decisions and the past precedent of the New Jersey Supreme Court, we cannot agree with the district court that, if faced with the issue today, the highest court of New Jersey would decide that proof of malice would not defeat the privilege of fair report. We conclude that under New

Jersey law, the publication of a report of an official action or proceeding is privileged, although it contains matter which is false and defamatory, if it is (1) accurate, complete, or a fair abridgment of such a proceeding, and (2) not published for the purpose of causing harm to the person defamed.

### V.

■ Presuming, without deciding, that the Time article purports to summarize the Webster memorandum and, as such, constitutes a report of an official action or proceeding, we must decide whether that summarization is fair. Because this is a question of fact, *see Coleman*, 29 N.J. at 376, 149 A.2d at 203, 205; *Nusbaum*, 86 N.J.Super. at 138, 206 A.2d at 187; Restatement (Second) of Torts § 619 (1977), and the case was dismissed on the pleadings, all we need determine is whether the fairness of the summary emerges so incontrovertibly from a comparison of the Webster memorandum with the Time article that no rational jury considering these documents, with the aid of whatever evidence Ronald A. Schiavone and Schiavone Construction Company might introduce, could consider the summary unfair. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 271 (7th Cir.1983).

In defining "fairness" for purposes of the fair report privilege, a comment to the Restatement is helpful. It provides:

> Not only must the report be accurate, but it must be fair. Even a report that is accurate so far as it goes may be so edited and deleted as to misrepresent the proceeding and thus be misleading. Thus, although it is unnecessary that the report be exhaustive and complete, it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it, as for example a report of the discreditable testimony in a judicial proceeding and a failure to publish the exculpatory evidence ....

Restatement (Second) of Torts § 611 comment f (1977) (quoted in *Reilly,* 176 N.J.Super. at 328, 423 A.2d at 315). Here, Time's summary of the Webster memorandum is accurate insofar as it goes; yet it is incomplete. After mentioning that the Schiavone name appeared several times in the F.B.I.'s reports on the disappearance of Jimmy Hoffa, the article fails to indicate, as did the Webster memorandum, that "none of the [references to Schiavone] suggested any criminality or organized crime associations." App. at 55a. Moreover, after revealing the claimed mention of Schiavone's name in the Hoffa file, the Time article concludes:

> That detail would surely have intrigued both the Senate committee that approved Donovan's nomination in February 1981, and the special prosecutor this year. But neither learned about it until last month.

App. at 6a. This editorial addition, especially when coupled with Time's omission of the exculpatory language in the Webster memorandum, more than sufficiently creates a question of fact as to the fairness of Time's summarization of the Webster memorandum so as to preclude a determination by the district court that publication of the article was privileged as a matter of law. We therefore reverse the judgment of the district court and remand for further factual proceedings.[1]

## VI.

The judgment of the district court will be reversed and the cause remanded for fur-

ther proceedings in accordance with the foregoing.

---

1. In light of our disposition, we need not decide whether the district court's determination of privilege, and consequent dismissal of appellants' complaint, can be sustained on the alternate grounds suggested by appellants. As the case proceeds on remand, *Time* undoubtedly will introduce evidence to show that its article is a report of an official action or proceeding in an attempt to establish the existence of a privilege. This evidence may well include proof that the journalist who wrote the article had knowledge of, or relied on, the Webster memorandum in writing the article. Because the district court proceeding was limited to a Rule 12(b)(6) mo-

tion, there is nothing in the record revealing the basis for the journalist's article. We, therefore, cannot reach the question whether knowledge or reliance are prerequisites to invocation of New Jersey's fair report privilege. In addition, as we have already determined that proof of malice can defeat the privilege, plaintiff-appellants will be free on remand to introduce evidence to show that Time abused the privilege by publishing the article with malice. The parties, of course, will bear their respective burdens of proof in accordance with appropriate legal precepts.