[No. A038141. First Dist., Div. Four. Mar. 4, 1988.]

MARTHA HOWARD et al., Plaintiffs and Appellants, v. OAKLAND TRIBUNE et al., Defendants and Respondents.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Benjamin Lusk, Jr., for Plaintiffs and Appellants.

Peter W. Davis, John E. Carne and Crosby, Heafey, Roach & May for Defendants and Respondents.

OPINION

CHANNELL, J.—The trial court dismissed defamation actions brought by appellants Martha Howard and Stephen Brooks against respondents Oakland Tribune, publisher Robert Maynard, and reporters Jack Cheevers and Paul Grabowicz after the respondents obtained a summary judgment. Howard and Brooks appeal, contending that the underlying Tribune articles were not reports of public official proceedings within the meaning of section 47 of the Civil Code,[1] and thus were not privileged. We affirm the judgments.

## I. FACTS

On February 28, 1985,[2] the Oakland Tribune published an article stating that Oakland's Beebe Children's Center, a state-subsidized child care program, was under investigation by the state Department of Education for alleged misuse of public funds. Among other charges, the article reported that independent audits of the center on file with the state revealed that appellant Stephen Brooks, husband of Beebe's executive director Delores Brooks, was paid $10,500 for fundraising services, a practice prohibited by state regulation. On March 1, the Tribune reported that the department had cancelled its contract with Beebe, citing 20 violations of state law and its contract. The article repeated the allegation that Stephen Brooks was paid $10,500 for fundraising services. Stephen Brooks sought a retraction from the Tribune, without success. (§ 48a.)

On March 22, the Tribune published a report that the Department of Education had asked Attorney General John Van de Kamp to investigate allegations that Delores Brooks had misused public funds.[3] According to this article, the state cancelled its contract with Beebe Children's Center because its director allegedly used state child care funds for personal, political, and charitable purposes. The article reported that a 36-page "Summary of Findings" from the education department's investigation alleged that Beebe officials committed hundreds of violations of the center's state contract and misused tens of thousands of dollars in state funds. Specifically, the report alleged that the center did not collect $1,337 in fees for child care services provided to appellant Martha Howard, Delores Brooks's sister; and that Stephen Brooks was improperly paid $10,500 in fundraising costs. After the article was published, Stephen Brooks lost his job as executive director of the Bay Area Black United Fund and Howard was forced to

---

[1] All statutory references are to the Civil Code, unless otherwise indicated.
[2] All dates refer to the 1985 calendar year.
[3] Copies of the three Oakland Tribune articles are appended to this opinion.

leave her employment as a Beebe administrator. Ultimately, the Department of Education reinstated Beebe's contract and its funding.

Martha Howard and Stephen Brooks each brought defamation actions against the Oakland Tribune, publisher Robert Maynard, and reporters Jack Cheevers and Paul Grabowicz.[4] The first two articles formed the basis of Brooks's action; Howard cited the March 22 article as the defamatory publication in her complaint.

The parties stipulated that the articles were accurate accounts of the Department of Education's "Summary of Findings" from their review of the Beebe child care center. In the trial court, Howard and Brooks argued that the Tribune could be held liable for defamation if the "Summary of Findings" was false, even if the newspaper's account of it was accurate. The parties filed contradictory declarations from education officials on the issue of whether the "Summary of Findings" was a public document and/or arose out of a public official proceeding as that term is used in section 47, subdivision 4.

The two actions were consolidated and the Tribune moved for summary judgment, contending that the articles were "privileged as reports of public official proceedings" within the meaning of section 47, subdivision 4. Summary judgments were granted and the defamation actions were dismissed.

## II. PRIVILEGE

Under section 47, subdivision 4, "a fair and true report in a public journal" of a "public official proceeding" or "of anything said in the course thereof" is privileged. (§ 47, subd. 4.)[5] ■ On appeal, Howard and Brooks challenge the trial court's summary judgment by disputing the finding on which it was based—the conclusion that the Tribune articles were privileged because the reported proceedings were "public official proceedings" within the meaning of this provision.[6]

■ A trial court faced with a motion for summary judgment must decide whether the plaintiff has presented any *facts* that give rise to a triable issue or defense. (*Trailer Train Co.* v. *State Bd. of Equalization* (1986) 180

---

[4] For convenience, all respondents will be referred to as "the Tribune."

[5] As Howard and Brooks concede that the publication was a fair and true report in a public journal, we need not address these issues. (See *Green* v. *Cortez* (1984) 151 Cal.App.3d 1068, 1073 [199 Cal.Rptr. 221].)

[6] We were not aided in our resolution of this appeal by the appellants' opening brief, which was riddled with inaccurate and incomplete case citations and which frequently referred to cases without reference to the pages on which the cited holdings appear. (See Cal. Style Manual (3d ed. 1986) § 99.)

Cal.App.3d 565, 586 [225 Cal.Rptr. 717]; see Code Civ. Proc., § 437c.) If there is no triable issue of fact, the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see *Hayward* v. *Watsonville Register-Pajaronian and Sun* (1968) 265 Cal.App.2d 255, 262 [71 Cal.Rptr. 295] [summary judgment properly granted in § 47, subd. 4 case].) ■ Whether or not a privileged occasion exists within the meaning of section 47, subdivision 4 is a question of *law*. (*Handelsman* v. *San Francisco Chronicle* (1970) 11 Cal.App.3d 381, 386 [90 Cal.Rptr. 188]; see 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 312, p. 2582; see also *Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014] [statutory application to uncontradicted facts presents question of law].)

One appellate court has construed section 47, subdivision 4's reference to "public official proceeding" to include a police investigation into allegations of use of excessive force by police. (*Green* v. *Cortez, supra,* 151 Cal.App.3d 1068, 1073.) While the *Green* language is dictum, its interpretation is consistent with what we construe to be the plain meaning of section 47, subdivision 4. ■ If a police internal affairs investigation is a "public official proceeding" within the meaning of this statute, then a state administrative agency investigation into the expenditure of public funds must also be such a proceeding. The Tribune report was privileged. (§ 47, subd. 4.)

The privilege accorded by section 47, subdivision 4 has been absolute since 1945 when the Legislature deleted the qualifying requirement that such privileged publications be made without malice. ■ Thus, neither malice on the part of the media nor the fact that the author of the reported statements may have abused his or her personal privilege (see § 47, subds. 1-3) will defeat the media privilege codified in this statute. (*Green* v. *Cortez, supra,* 151 Cal.App.3d at pp. 1074-1075.) ■ As the trial court correctly interpreted section 47, subdivision 4 and there was no triable issue of fact, the Tribune was entitled to summary judgment as a matter of law. (See Code Civ. Proc., § 473c, subd. (c).)

### III. SANCTIONS

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

The judgments are affirmed.

Anderson, P. J., and Poché, J., concurred.

---

*See footnote, *ante,* page 1124.

APPENDIX A

# THE TRIBUNE

CO⸱⸱⸱RA
CO
FINAL

and, California     Thursday, February 28, 1985     Home delivery $8 a month

# Four day-care centers probed

## Ex-staffers charge funds are misused

By Jack Cheevers
and Paul Grabowicz
The Tribune

An Oakland child-care program is under investigation by the state for allegedly misusing public funds, falsifying records, engaging in nepotism and diverting state money for the personal use of its executive director, The Tribune has learned

The probe of Beebe Children's Center Inc., a state-subsidized operation that serves 120 children, most of them from low-income families, was prompted by complaints of former Beebe employees to state Department of Education investigators

If the allegations are substantiated, they could result in cancellation of the education department's contract with Beebe, which received $479,000 in state funds last year to run four day-care centers in West and North Oakland

The ex-employees allege

■ Children's attendance records were falsified by Beebe in order to inflate the amount of state money the day-care center received

■ Public funds were used to pay Beebe Executive Director Delores Brooks' insurance premiums on her Fiat and Mercedes-Benz automobiles and her home telephone bills.

■ Brooks' mother, daughter, two sisters, and brother-in-law were hired to work at the center

■ Beebe paid more than $10,000 in child-care funds to Brooks' husband, Stephen, to do fund raising for the center.

■ Child-care funds were used to buy more than $5,000 in tickets to fund-raising dinners for the Bay Area Black United Fund, which is headed by Stephen Brooks

■ A $350 political contribution was made in 1983 to the re-election campaign of state Assemblyman Elihu Harris D-Oakland, using child-care funds.

Delores Brooks declined comment on the allegations and referred reporters to Oakland attorney J Brittain Habegger

Habegger, who told The Tribune he was unfamiliar with the day to-day operations of the center, said he has "no knowledge" of most of the allegations

See CENTERS, Page A-4

# State looks at alleged improprieties in four Oakland day-care centers

Continued from Page a-1

legations against Beebe.

"There have been allegations of wrongdoing by various former disgruntled employees," Habegger said. "As far as I know, the allegations are without merit, and I have heard nothing that the state Department of Education is finding anything adverse about Beebe."

Habegger also suggested that the of Beebe's financial problems stemmed from "frequent" underfunding by the state.

Janet Poole, deputy director of the education department's division of child development, confirmed that her office began a probe of Beebe last August and will issue a report on the findings within a month.

"We are conducting a review of Beebe's records prompted by allegations made by former employees," Poole said "Basically our review is in terms of their fiscal and attendance record-keeping."

Beebe was founded in 1967 under the auspices of the Oakland Council of Churches to provide day-care services to poor families, and Brooks later became its executive director. In 1971, Beebe incorporated as an independent, non-profit operation.

One of Beebe's four centers is located at the Beebe Memorial Temple, at 3900 Telegraph Ave. in Oakland, but the church has no other connection to the child-care operation

The others are at 1420 Myrtle St., 5130 West St. and 995 44th St.

Beebe, which last year had a $585,000 budget, received 82 percent of its funding from the state education department. Most of the rest came from parent fees and grants from private charities such as the United Way

The money Beebe receives from the state is based on the number of children enrolled in the program, which provides day care to infants, pre-schoolers and some grade-school children. The state pays Beebe $15.10 a day for each child.

Two ex-directors of Beebe centers and a former executive secretary at Beebe's head office told The Tribune  y falsified attendance rec     it the re-

"If a child wasn't there, we'd sign them in like they were there anyway," said Helen Wilson, who had been a director of two Beebe centers before resigning last year. "It was a standard thing to do."

Joyce Dyer, Beebe's former executive secretary who also quit last year, said she changed records to make it appear that newly enrolled children had been in the program several months.

"If a kid started in June, I had to add him (to the rolls) for February, March, April and May," Dyer said.

Employees also allege child-care funds were diverted to the personal use of Delores Brooks, who earned $36,000 last year as Beebe's executive director.

Brooks, 43. who lives in Walnut Creek, used Beebe funds to pay for insurance premiums on a Fiat and later a Mercedes she owned, according to two people familiar with Beebe.

They claim child-care funds also were used to pay Brooks' home telephone bills, which often ran to several hundred dollars per month.

Several of Brooks' relatives are on the Beebe payroll, including her sister, Martha Howard, who is the center's administrator, according to former employees.

State regulations governing the use of child-care money prohibit relatives of a center's executive director from holding jobs where they would control spending.

Other relatives who employees said have been on Beebe's payroll include Brooks' mother, Gladys Grayson, who is supervisor of food services; a sister, Rose Marie Brooks, employed as a secretary; a daughter, Lorea Hopkins, who formerly worked as a secretary; and a brother-in-law, James Brooks, who used to work in Beebe's kitchen.

According to independent audits of Beebe's financial records on file with the state, Delores Brooks' husband, Stephen, was paid $10,500 in 1980-81 to perform "fund-raising services."

State regulations prohibit child-care centers from using public money for fund raising.

Stephen Brooks said he helped raise about $40,000 for

Tribune he could not recall how much Beebe gave him for his services, but said $10,500 "sounds like more than I was paid."

Employees also allege Beebe officials used child-care funds to make contributions to the Bay Area Black United Fund, a charitable group headed by Stephen Brooks.

Between 1979 and 1984, Beebe bought more than $6,000 worth of tickets to annual dinners sponsored by the Black United Fund, according to people familiar with the center.

State regulations ban the use of public funds to make charitable donations.

In interviews with The Tribune, two employees said they also were under "intensive pressure" from Delores Brooks to make personal donations to the Black United Fund.

"She wanted everybody to give to the (Black) United Fund," said Wilson.

Delores Brooks angrily told some employees who resisted making the donations to "come and get your paychecks," according to Wilson.

Stephen Brooks said he was unaware of any pressure placed on Beebe employees.

Beebe also contributed $350 in 1983 to the re-election campaign of Assemblyman Harris, according to his campaign records State regulations bar the use of public funds to make political contributions.

Attorney Habegger said he was not aware of most of the allegations about Beebe's use of the child-care funds.

He noted, however, that a portion of Beebe's child care program is not subsidized by the state. Instead, it is fully funded by parent fees.

That money is not restricted by state regulations and could have been used to make charitable and political contributions, Habegger suggested.

But audits of Beebe's finances over the last four years show that there was no money in the private component of Beebe's program because its costs exceeded revenues each year. As a result, Beebe officials shifted public funds into the private program to help cover the deficit, the audits

By Leonie Wilson/The Tribune

This Beebe child-care center on Telegraph Avenue in Oakland is one of four under investigation.

called the shifts a "shell game" that allowed Beebe to spend public funds on activities that were not permitted under its contract with the state.

Stephen Brooks suggested that the money Beebe gave to him and to the Black United Fund may have come from Beebe's own community fund-raising events.

But those events, according to the audits, consistently lost money for the center.

The only other significant income the center received was in the form of grants from private charities. That money was earmarked for day-care activities, according to the audits and representatives of the charities.

Tim Dayonot, a representative for United Way, said that prior to 1983 his organization granted Beebe funds for administrative expenses that could have been used for fundraising activities

Employees also said that Beebe's financial records were often in disarray and that little attempt was made to separate public and private income.

The 1982 audit of Beebe's records, for example, reported that financial reports filed with the state "do not agree with the accounting records." The audit found that some expenditures were undocumented, and that three sets of records for parent fees were kept, "none of which agree."

Beebe often was late in meeting its payroll and making payments to an employee health plan, and in 1981 was hit with a $40,000 lien on its property by the Internal Revenue Service for failure to pay employee income tax withholdings, according to the audits.

In addition, Beebe paid $1,-400 in fines last month to the state Labor Commission for failing to pay 29 employees on time last May, commission records show

Overall, the center was $41,-000 in the red as of June 1984, including a $13,095 deficit in its community fund-raising program, according to its 1984 audit.

Beebe also collected nearly $5,000 in United Way payroll deductions from employees between 1981 and 1984 that were not forwarded to the charity, according to commission files.

Following a complaint filed with the labor commission by an employee, Beebe paid the money last September.

The commission files say Brooks blamed the delay on "untimely and erratic" payments of child-care money to Beebe from the state education department.

Attorney Habegger said the failure to pay United Way was properly recorded and was carried on Beebe's books as a liability.

Habegger said Beebe has submitted regular audits of its finances to the Deparment of Education and has received "two funding increases from the state since the investigation has been going on."

He said he expects the organization to get a "clean bill of health" when the state probe is completed.

1132

# THE TRIBUNE

CONTRA COSTA FINAL

Oakland, California        Friday, March 1, 1985        Home delivery 35 a month

# State cancels day-care pact

## Oakland facility to lose funds

**By Jack Cheevers
and Paul Grabowicz**
*The Tribune*

The state Department of Education yesterday decided to cancel its $460,000 contract with an Oakland child-care program, citing 20 violations of state law and the contract, The Tribune has learned.

The state intends to halt its funding of Beebe Children's Center Inc. on May 31. Beebe operates four day-care centers in North and West Oakland that serve 120 children, most of them from poor families.

Beebe Executive Director Delores Brooks said last night she will appeal the decision.

The Tribune reported yesterday that the state was investigating allegations by former Beebe employees that the child-care program misused public funds, falsified records, engaged in nepotism and diverted state money for Brooks' personal use.

In a three-page press release issued yesterday afternoon, Brooks denied the allegations, saying she was "confident (the state) will exonerate Beebe Children's Centers ... "

Beebe officials were not formally notified yesterday of the contract cancellation, and state education officials refused to comment on it.

But The Tribune obtained a copy of an education department letter delivered yesterday to Eastbay legislators informing them of the termination.

The letter indicated that over a five-year period Beebe mismanaged its operations, used state funds improperly to make political or charitable contributions and billed the state for costs that were unreasonable or unnecessary

The state letter said officials will begin searching immediately for a new operator to take over the Beebe contract and will make "every effort to prevent any disruption in service" to families now served by Beebe.

Brooks said last night that Beebe was the victim of a "conspiracy" between state officials and a former employee who has filed a wrongful dis-

*See DAY CARE, Back Page*

## *Day care*

Continued from Page A-1
charge lawsuit against the program.

Former Beebe employees have told state investigators Brooks used child care funds to pay her home telephone bills and insurance premiums on Fiat and Mercedes-Benz automobiles she owned.

According to the ex-employees and public records, child-care money also was used to make a $350 campaign contribution in 1983 to Assemblyman Elihu Harris, D-Oakland, and to buy more than $6,000 worth of tickets to fund-raising dinners held by the Bay Area Black United Fund, which is headed by Brooks' husband, Stephen.

In addition, Beebe employed Delores Brooks' mother, two sisters, a daughter and a brother-in-law, and in 1980-81 paid Stephen Brooks $10,500 for "fund-raising services," according to the employees and public records

Three ex-employees told The Tribune that Brooks and other Beebe officials instructed them to falsify children's attendance records to inflate the amount of state money Beebe received.

The state pays Beebe $15.40 a day for each child enrolled in its infant, pre-school and grade-school programs. The state provided 82 percent of Beebe's $585,000 budget last year.

In her press release, Brooks denied that attendance records were falsified. She said independent audits of Beebe's records had shown "no irregularities."

However, a 1984 audit of Beebe's finances filed with the state noted there were "errors in counting the enrollment and attendance."

Brooks further said her cars were used "primarily" for business purposes and that "only appropriate calls" from her home phone were paid for with child-care funds.

People familiar with Beebe told The Tribune, however, that Beebe files contained little documentation that Brooks used her Fiat and Mercedes for business purposes.

They also said her monthly home phone bills were paid with child-care funds and that Brooks did not reimburse the program for personal calls.

Brooks' press release, which was co-signed by Beebe board Chairman Cecil Burgess, said the decision to employ five of Beebe's board of directors.

She said state regulations "don't prohibit" Beebe from hiring her relatives.

But a copy of the state's 1984-85 contract terms says child-care programs can't employ "any individual occupying control over the (program's) fiscal affairs when such individual is an immediate family member of any ... executive officer."

Brooks' sister, Martha Howard, is employed as Beebe's administrator.

Brooks also defended the fund-raising payments to her husband, Stephen, saying the money he raised was "a major factor in keeping (Beebe) alive" when "the state's contracting ineptitude" had created a budget deficit.

State regulations bar child-care centers from using public funds to pay for fund-raising activities.

Brooks said the contribution to Harris was payment for a "business luncheon" sponsored by the assemblyman and attended by Beebe staff.

Harris' campaign statements list the contribution as a political donation, however. Harris did not return two Tribune phone calls yesterday.

## APPENDIX C

# Attorney general probe sought of child center's use of funds

**By Jack Cheevers and Paul Grabowicz**
The Tribune

State education officials yesterday asked Attorney General John Van de Kamp to investigate allegations that public funds were misused by top administrators of Beebe Children's Center.

The state attorney general was asked to examine files compiled by Department of Education investigators during a six-month probe of Beebe, which operates four Oakland day-care centers serving 120 children.

The education department last month canceled its $460,000 contract with Beebe, citing violations of the contract and state law.

Education officials allege state child-care funds were improperly used to make political and charitable contributions, and to pay home telephone bills and insurance premiums on a Mercedes-Benz owned by Beebe executive director Delores Brooks.

Beebe officials deny the allegations and are appealing the contract termination, which takes effect May 31.

In a press release issued Tuesday, Beebe Board President Cecil Burgess Sr. said he expected the dispute with the state would "soon be resolved."

Joe Symkowick, the education department's chief legal counsel, said yesterday his department asked the attorney general to examine Beebe' records to "see if there's any information in there" that would warrant civil or criminal prosecution.

Beebe attorney J. Brittain Habegger said he was not aware of the action and could not comment.

A 36-page summary of the education department's investigation alleges Beebe officials committed hundreds of violations of the center's state contract and misused tens of thousands of dollars in state funds.

Among the allegations:

■ Beebe used state funds to pay Brooks' home phone bills, including "non-business-related out-of-state calls."

■ Brooks, who was paid $36,000 a year by Beebe, only showed up at her Oakland office "two or three times a month."

■ Brooks and other Beebe officials, including her mother and sister, received 20 percent pay raises in January 1983 at a time when the child-care center was more than $20,000 in debt.

■ Beebe failed to collect $1,337 in fees that Brooks' sister, Martha Howard, owed for care provided her son while he was enrolled at the center.

■ Beebe made thousands of dollars in improper "salary advances" to its employees, including Brooks and Howard.

■ Beebe officials used child-care funds to make numerous charitable donations, including $4,000 to the Bay Area Black United Fund, which is headed by Brooks' husband, Steven.

■ Beebe improperly used state money to pay fund-raising costs, including $10,500 paid to Steven Brooks to help obtain charitable grants for the center.

■ Beebe used state funds to make a $300 political contribution to state Assemblyman Elihu Harris, D-Oakland.

The state also alleges that Beebe "frequently" bounced checks, failed to pay creditors on time and reimbursed employees for travel expenses and supplies that were not adequately documented in Beebe's files.

In one instance, an employee was reimbursed $490 for travel expenses that were described

See PROBE, Page B-3

## Probe

Continued from Page B-1

simply as "bus from home," according to Beebe records. In another case, Brooks was reimbursed $317 for what was described as "supplies — private."

Beebe officials have said the allegations are the result of a "smear campaign" against the child-care center by "disgruntled former employees."

Brooks has said she conducted much of the child-care center's business from her Walnut Creek home. The questioned phone calls and use of her automobile all were business-related, she said.

Beebe officials said the political contribution to Harris was payment for a "business luncheon" sponsored by t e assemblyman and attended by Beebe staff.

The officials also said some of Beebe's money came from private sources and therefore is not restricted by state child-care regulations.

Steven Brooks has denied public funds were used to pay for his fund-raising efforts and said he did not engage in any "illegal or improper activities."

He has said there was no "collusion between my wife ... and I to pass money from Beebe Children's Centers to me."

Beebe officials have blamed the child-care center's financial woes on the state's failure to properly fund it.

State education officials said that if the attorney general's office concludes there is a basis for civil or criminal action against Beebe, the case will be turned over to the Alameda County District Attorney's Office.

Oakland Tribune
March 22, 1985