**Arnold G. DORSEY, a.k.a. Engelbert Humperdinck, Plaintiff–Appellant,**

**v.**

**NATIONAL ENQUIRER, INC., Defendant–Appellee.**

**Nos. 90–55017, 90–55344.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 1991.

Decided Dec. 11, 1991.

Robert H. Rotstein, Rosenfeld, Meyer & Susman, Beverly Hills, Cal., for plaintiff-appellant.

Richard S. Hoffman, Williams & Connolly, Washington, D.C., for defendant-appellee.

Before PREGERSON, BEEZER and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

Arnold Dorsey, better known as Engelbert Humperdinck, sued the National Enquirer, Inc. alleging that an article in its tabloid defamed him. The district court granted summary judgment in favor of the Enquirer and Dorsey appeals. We affirm.

## I

In 1980, Kathy Jetter obtained a determination in New York Family Court that Dorsey was the father of her daughter. The court ordered Dorsey to pay child support and educational expenses. *See Kathy G.J. v. Arnold D.*, 116 A.D.2d 247, 501 N.Y.S.2d 58 (1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). In May, 1988, Jetter petitioned the same court for an increase in child support payments and for an order requiring Dorsey to purchase life insurance naming the girl as his beneficiary.

Dorsey opposed the request and Jetter filed a Reply Affidavit. In the affidavit she stated: "The request for life insurance is of a dire necessity. Upon information and belief, the respondent has AIDS related syndrome and has been treated at Sloan Kettering in New York." Sometime before December 1988, Jetter gave the National Enquirer a copy of this affidavit. In its December 27, 1988 edition, the Enquirer published an article that highlighted the Reply Affidavit's allegation that Dorsey carries the AIDS virus.

The Enquirer's front page displays a photo of Dorsey next to the headline: *"Mother of His Child Claims in Court ... Engelbert Has AIDS Virus."* The article itself bears the headline: *"Mom of Superstar Singer's Love Child Claims in Court ... Engelbert Has AIDS Virus."*

The one-page article quotes Jetter's affidavit twice and quotes Jetter as saying: "I never would have filed the court papers if I wasn't 100 percent convinced he has the AIDS virus." Jordan Stevens, a private investigator hired by Jetter, is quoted as saying:

Humperdinck is suffering from the AIDS virus. We have stated that belief in court papers and it is based on an intensive investigation of the singer during the past five years.

He was tested positive for the AIDS virus in early 1985. As stated in the court documents, he has had treatment for the AIDS virus at Sloan–Kettering hospital but our information is that the disease remains.

The article goes on to explain the ramifications of having the AIDS virus.

The article discusses Jetter and Dorsey's relationship and their previous legal proceedings over child support, leading up to the life insurance request and Reply Affidavit. The third paragraph notes that Dorsey denies the affidavit's AIDS allegation. In the next-to-last paragraph, the Enquirer reports that Dorsey's attorney "said there was no truth whatsoever to the charge that the singer has the AIDS virus and called it an 'utter fabrication.'" The article also includes a picture of Dorsey with the caption: *"ENGELBERT DENIES* he has the AIDS virus."

Dorsey filed a defamation action against the Enquirer. The Enquirer moved for summary judgment. The district court granted the motion, finding as a matter of law that the article was a fair and true report of allegations made in a judicial proceeding. Thus, it was privileged under California law and protected by the United States Constitution. The district court further held that the incremental harm doctrine shielded the Enquirer from liability.[1]

Dorsey timely appealed the summary judgment order. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II

We review the district court's grant of summary judgment de novo. *Kruso v. International Tele. & Tele. Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). "In reviewing a grant of summary judgment, we draw all inferences of fact in favor of the party opposing the motion."

---

1. The Enquirer does not raise the defense that the published allegations themselves are true. In connection with this lawsuit, a doctor chosen by the Enquirer tested Dorsey for the HIV virus. Dorsey tested "negative." Dorsey also filed a declaration asserting that he has never tested positive for the virus and has never received medical treatment of any kind at a Sloan–Kettering hospital facility. The Enquirer does not dispute Dorsey's assertion that he does not have AIDS or "AIDS related syndrome."

*Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 138 (9th Cir.1981).

Dorsey is a citizen of England and the Enquirer is a Florida corporation. The district court was therefore sitting in diversity pursuant to 28 U.S.C. § 1332(a)(2). The case was brought in California and the parties do not dispute that California law applies. *See Reeves v. American Broadcasting Companies, Inc.*, 719 F.2d 602, 605 (2nd Cir.1983).

## A. Scope of the California Privilege

California law defines an area of reporting which is privileged from defamation actions. Section 47(4) of the state's Civil Code grants the privilege to "a fair and true report in a public journal, of (1) a judicial, (2) legislative, or (3) other public official proceeding, or (4) anything said in the course thereof...." Cal.Civ.Code 47(4) (West 1982)[2]. The district court applied section 47(4) and found that, as a matter of law, the Enquirer article was a fair and true report of a judicial proceeding.

Dorsey first contends that section 47(4) is inapplicable here because the Enquirer article does not report on a "judicial" proceeding within the meaning of the statute. He asserts that the use of the phrase "other public official proceeding" in section 47(4) demonstrates that the California legislature intended the judicial and legislative privileges to be similarly limited to only those proceedings open to the public. Dorsey further asserts that New York Family Court proceedings are confidential and thus outside the scope of the statutory privilege.

We must initially determine whether Dorsey waived this issue by not raising it in the district court. Generally issues cannot be raised for the first time on appeal. *Jovanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir.1987). We permit a discretionary exception to this rule "when the issue is purely one of law." *Id.*

■ Dorsey correctly asserts that his argument on the scope of the section 47(4) privilege raises a purely legal issue. "Whether or not a privileged occasion exists within the meaning of section 47, subdivision 4 is a question of *law*." *Howard v. Oakland Tribune*, 199 Cal.App.3d 1124, 1128, 245 Cal.Rptr. 449, 451 (1988). We, therefore, consider the merits of Dorsey's contention that the statute does not encompass reports of proceedings in New York Family Court.

Dorsey's proposed limitation on the privilege's scope lacks support in the case law. As one California court noted, "[i]n determining the scope of the term 'judicial proceeding' within the purview of the rule, the courts of [California] seem to take a comparatively broad view of the question." *Glenn v. Gibson*, 75 Cal.App.2d 649, 171 P.2d 118, 125 (1946) (privilege applies where newspaper accounts were based on many sources, including out-of-court statements). For example, the *Howard* court applied section 47(4) to an article about an internal report of a state administrative agency. 199 Cal.App.3d at 1127, 245 Cal. Rptr. at 450. Another appellate court extended it to a newspaper article based upon information obtained from a police department crime report and an FBI "rap sheet." *Hayward v. Watsonville Register–Pajaronian and Sun*, 265 Cal.App.2d 255, 71 Cal.Rptr. 295, 298 (1968). Neither the crime report nor the rap sheet could be considered a judicial proceeding open to the public. *Id.*

■ The Second Circuit, sitting in diversity and applying California law, extended the privilege to a report of secret grand jury proceedings. *Reeves*, 719 F.2d at 605–606. The court commented that the only limitation in section 47(4) concerning judicial proceedings is that the report be fair and accurate. *Id.* The courts have not read "public" to modify "judicial" in section 47(4). We thus reject Dorsey's argument that the privilege cannot apply to family court proceedings from which the general public is excluded.[3]

2. Recodified as Cal.Civ.Code 47(d) (West Supp. 1991).

3. Additionally, we note that the proceedings in New York Family Court are not strictly confidential. Access of non-parties to records and

## B. Resolution as a Matter of Law

■ Dorsey next contends that the trier of fact should have been allowed to determine whether the Enquirer article is a "fair and true" report of the Reply Affidavit's contents. We disagree. When there is no dispute about the material facts, the "fair and true" issue is generally one of law which can be decided by the court on summary judgment.

■ The California courts have established a standard to determine when this essentially mixed question of law and fact is treated as a question of law. The "fair and true" issue is one of law when "there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report." *McClatchy Newspapers, Inc. v. Superior Court,* 189 Cal.App.3d 961, 976, 234 Cal. Rptr. 702 (1987); *see also Cox v. Los Angeles Herald Examiner,* 234 Cal.App.3d 1618, 286 Cal.Rptr. 419 (1991) (holding that article was "fair and true" as a matter of law) and *Kilgore v. Younger,* 30 Cal.3d 770, 180 Cal.Rptr. 657, 640 P.2d 793 (1982) (same). In *Jennings v. Telegram–Tribune Co.,* 164 Cal.App.3d 119, 210 Cal.Rptr. 485, 489–90 (1985), the court specifically considered the argument that the fairness of a controverted article ought to be one of fact for the jury. Finding that the material facts were not in dispute and that the reasonable inferences from those facts all led to the same conclusion, the court rejected the argument and held that a newspaper article about a tax prosecution was "fair and true" as a matter of law.

In crafting their treatment of the "fair and true" issue, the courts have recognized the importance of protecting a free and vigorous press. The California Supreme Court has said that "because unnecessarily protracted litigation would have a chilling effect upon the exercise of First Amendment rights, speedy resolution of cases involving free speech is desirable." *Good Government Group of Seal Beach, Inc. v. Superior Court,* 22 Cal.3d 672, 150 Cal. Rptr. 258, 586 P.2d 572 (1978), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). Therefore, defamation actions should be disposed of at the earliest possible stage of the proceedings if the facts as alleged are insufficient as a matter of law to support a judgment for the plaintiff. *Jennings,* 210 Cal.Rptr. at 490.

■ In the instant action there is no dispute over what occurred in the judicial proceeding, nor is there any dispute over the contents of the article in the Enquirer. The district court had both the Reply Affidavit and the article before it; there are no disputed facts; the reasonable inferences therefrom all lead to the same conclusion. Thus, the district court could determine, as a matter of law, whether the article is a "fair and true" report.

## C. Application of the "Fair and True" Standard

■ Dorsey next contends that the article is not a "fair and true" report of the Reply Affidavit's contents. He points to the Enquirer's inclusion of statements elaborating on the affidavit's allegations, and to the Enquirer's failure to include statements that undercut Jetter's credibility. We agree with the district court that the article is a "fair and true" report of the affidavit.

In *Kilgore,* the California Supreme Court set forth the test for determining whether a publication qualifies as a "fair and true" report. 30 Cal.3d at 777, 180 Cal.Rptr. 657, 640 P.2d 793.[4] The court held that an article that captures the substance of the

---

proceedings is left to the discretion of the court. *See* N.Y. Fam. Ct. Act § 166; N.Y. Uniform R. Fam. Ct. § 205.4. New York law specifically allows the judge to admit members of the media to proceedings in Family Court and grants the judge the power to designate areas in the courtroom for reporters. N.Y. Uniform R. Fam. Ct. § 205.4. Moreover, parties to Family Court proceedings are not prohibited from giving copies of court records to others.

**4.** Although the California Supreme Court was applying section 47(5) of the California Civil Code in *Kilgore,* the "fair and true" requirement for the § 47(5) privilege is identical to the "fair and true" requirement for the § 47(4) privilege. Moreover, the *Kilgore* court cited *Hayward,* a § 47(4) privilege case, in its discussion of the "fair and true" requirement for § 47(5).

proceedings constitutes a "fair and true" report. *Id.* In making this determination, "the publication [is] to be measured by the natural and probable effect [it] would have on the mind of the average reader. The standard of interpretation to be used in testing alleged defamatory language is how those in the community where the matter [was] published would reasonably understand [it]."

*Id.* (citing *Handelsman v. San Francisco Chronicle,* 11 Cal.App.3d 381, 90 Cal.Rptr. 188 (1970) (citations omitted)). Section 47(4) "does not require the reporter to resolve the merits of the charges, nor does it require that he present the [plaintiff's] version of the facts." [5] *Reeves,* 719 F.2d at 606–07; *see also Rollenhagen v. Orange,* 116 Cal.App.3d 414, 427, 172 Cal.Rptr. 49, 57 (1981).

■ The "fair and true" requirement of section 47(4) therefore does not require a media defendant "to justify every word of the alleged defamatory material that is published. The media's responsibility lies in ensuring that the 'gist or sting' of the report—its very substance—is accurately conveyed." *McClatchy Newspapers,* 189 Cal.App.3d at 975, 234 Cal.Rptr. 702 (citation omitted). Moreover, courts must accord media defendants a "certain amount of literary license" and exercise a "degree of flexibility" in determining what is a "fair report." *Id.* at 976, 234 Cal.Rptr. 702.

Dorsey contends that the article in the Enquirer does not capture the substance of the proceedings in the New York Family Court and thus is not a "fair and true" report. Dorsey first asserts that there is a greater "sting" in the article than in the Reply Affidavit.

The crucial part of the Reply Affidavit is the statement: "Upon information and belief, the respondent has AIDS related syndrome and has been treated at Sloan Kettering in New York." The article quotes that statement in part in the fourth paragraph and the twentieth paragraph. The combination of the two partial quotes captures the gist of the Reply Affidavit.

Dorsey asserts, however, that the article goes beyond the sting of the Reply Affidavit by including out-of-court statements made by Jetter and her investigator. Dorsey takes issue with Jetter's statement: "I never would have filed the court papers if I wasn't 100 percent convinced he has the AIDS virus." He also takes issue with Stevens' statements:

Humperdinck is suffering from the AIDS virus. We have stated that belief in court papers and it is based on an intensive investigation of the singer during the past five years.

He was tested positive for the AIDS virus in early 1985. As stated in the court documents, he has had treatment for the AIDS virus at Sloan–Kettering hospital but our information is that the disease remains.

Dorsey contends that the gist of the Reply Affidavit is that Jetter was not certain about her allegation that Dorsey had contracted the AIDS virus. According to Dorsey, the fact that Jetter prefaced her allegation with the qualifier "Upon information and belief" demonstrates that Jetter was stating that she did not have firsthand knowledge of whether Dorsey has the AIDS virus.

■ In comparison, Dorsey contends, the article states that Jetter was 100 percent convinced that Dorsey has the AIDS virus. The article also contains statements from her investigator that assert without qualification that Dorsey has the AIDS virus, that Dorsey tested positive in early 1985, and that Jetter's belief is based upon a five-year intensive investigation. Dorsey contends that the gist of these statements overwhelms and contradicts the Reply Affidavit's "information and belief" qualification.

Applying the standards set forth by the California Supreme Court in *Kilgore,* we must determine the natural and probable effect of the article on the average reader. The term "information and belief" is

A standard legal term which is used to indicate that the allegation is not based

---

**5.** Here, the Enquirer did report Dorsey's emphatic denial of the allegation.

on the firsthand knowledge of the person making the allegation, but that person nevertheless, in good faith, believes the allegation to be true.

Black's Law Dictionary 701 (5th ed. 1979).

Since the article twice quotes the Reply Affidavit, the average reader can be assumed to understand that Jetter's allegation was made with the "information and belief" qualification. The article also clearly states that Jetter made the allegation during a family court proceeding. It is unclear that an average reader would know the full import of qualifying an allegation made in court with the term "information and belief." However, whether the average reader understands the nuances of first versus second hand knowledge, the average reader can be expected to assume that an allegation made in court is made in good faith and based upon some information that gives the declarant reason to believe that the allegation is true.

Accordingly, Jetter's quoted out-of-court statement that she would not have filed the Reply Affidavit were she not 100 percent convinced that her allegation was true, merely confirms the gist of the Reply Affidavit. It confirms that she filed the Reply Affidavit in good faith.

The statements of Jetter's investigator are more problematic because they seem to suggest more certainty than does the affidavit. The investigator specifically states that Dorsey has the AIDS virus and pinpoints when Dorsey allegedly tested positive—early 1985. The investigator also explains that his information stems from an intensive five-year investigation.

■ The investigator's statements do not, however, go beyond the gist or sting of the affidavit. Dorsey claims the Enquirer article is defamatory because it alleges that he is infected by the AIDS virus. This is the substance of both the affidavit and the investigator's statements. In including Stevens' statements, the Enquirer did not exceed the degree of flexibility and literary license accorded newspapers in making a "fair report" of a judicial proceeding.

■ Additional support for this conclusion is found in California's expansive view of "judicial proceedings." Under 47(4), out-of-court statements are considered part of the judicial proceeding if they "comprise a history of the proceedings." *Glenn*, 75 Cal. App.2d at 660, 171 P.2d 118. Newspapers are not required to limit their stories to a verbatim rendition of the judicial proceeding. In adopting section 47(4), California provided a certain amount of breathing room for newspapers to explain the basis of a judicial proceeding without at the same time opening themselves up to exposure for defamation liability.

Following this analysis, the Enquirer's use of out-of-court statements from Jetter and Stevens is privileged because these statements "detail the circumstances, and [Jetter and Stevens'] theories based upon the circumstances, in regard to the [court proceeding]." *Hayward*, 71 Cal.Rptr. at 299 (quoting *Kilgore v. Koen*, 133 Or. 1, 288 P. 192 (1930)); *see also Reeves*, 719 F.2d at 606 ("the *Hayward* court found the [section 47(4) ] privilege applicable if based on sources connected with the history of the judicial proceeding...."). Because these statements "comprise a history of the proceedings," they come within the purview of section 47(4) even if they go beyond the sting of Jetter's affidavit.

Dorsey also argues that even if the out-of-court statements are found to capture the substance of the Reply Affidavit, they do not capture the substance of the entire proceeding in the underlying case. Dorsey points to a standardized form entitled "Statement of Net Worth" that Jetter filed in the New York Family Court after she filed the Reply Affidavit, and before the Enquirer published the controverted article. One of the inquiries on the Statement asks for information about a declarant's "husband's health." In response to this inquiry, Jetter wrote "unknown." This, Dorsey contends, demonstrates that Jetter took the position in court that she was unaware of the state of Dorsey's health and, thus, her AIDS allegation was a mere surmise.

The combination of the qualification in the Reply Affidavit and the admission of lack of knowledge in the Statement of Net Worth, paint a very different picture, according to Dorsey, than Jetter's statement quoted in the article that she was 100 percent convinced that Dorsey had contracted the AIDS virus. Accordingly, Dorsey contends that the Enquirer's failure to mention the Statement in its article rendered the article unfair and inaccurate.

■ Dorsey's argument is unpersuasive. The fact that Jetter wrote "unknown" in response to the health question does not prove that Jetter did not believe that Dorsey had contracted the AIDS virus.[6] Jetter sought life insurance for the benefit of her daughter on the ground that she believed Dorsey had contracted the AIDS virus and could die prematurely. That belief is not inconsistent with Jetter lacking knowledge about the current state of Dorsey's health.

Moreover, the Enquirer was unaware that the Statement existed. As noted above, only the parties had access to the Family Court records and neither party mentioned the document before the article was published. Considering the document's limited value, it is understandable that neither party gave it to the Enquirer.

### III

As an alternative ground for summary judgment, the district court applied the *Florida Star* doctrine, which protects truthful reporting of judicial proceedings. *See Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). Given our determination that California law protects the Enquirer article, we need not address whether the article is also protected by the Constitution. We decline to entertain this constitutional question unnecessarily.

6. Although Dorsey has never been Jetter's husband, we assume for the purposes of this analysis that Jetter was referring to Dorsey when she wrote "unknown."

### IV

We also decline, for the same reason, to address the district court's second alternative ground for summary judgment—that the "incremental harm" of the publication's defamatory component was too nominal to permit recovery.

### V

The district court's order granting summary judgment is AFFIRMED.

PREGERSON, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's view that there is no merit to Dorsey's argument that California Civil Code § 47(4) does not apply to family court proceedings from which the general public is excluded.

But I disagree with the majority's view that in the circumstances of this case the "fair and true" issue is one of law which a court can decide on summary judgment.

We all recognize certain basic rules governing summary judgment. District courts may properly grant summary judgment where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reviewing a grant of summary judgment, we [are required to] draw all inferences of fact in favor of the party opposing the motion." *Sankovich v. Life Ins. Co. of North America*, 638 F.2d 136, 138 (9th Cir.1981). Moreover, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, the moving party is not entitled to judgment as a matter of law and summary judgment is improper. *Id.* at 140.

Cases decided by California state courts under California Civil Code § 47(4) have not created an exception to this basic rule. No California case has required courts to decide the "fair and true" issue as a matter of law where reasonable minds could disagree about the appropriate conclusion to be drawn from undisputed facts.[1] Only

1. The recent decision in *Cox v. Los Angeles Herald Examiner*, 91 Daily Journal D.A.R. 12552 (Oct. 14, 1991), does not address the issue presented in the instant case. In *Cox*, the ques-

one reported opinion, a decision of a federal district court applying California law in a diversity case, has held that the fairness and truth issue is one of law. *See Crane v. Arizona Republic*, 729 F.Supp. 698, 702 (C.D.Cal.1989).[2] *Crane*, however, inaccurately stated the rule applied by California state courts.

California appellate courts have affirmed summary judgments or demurrers granted in favor of media defendants. *See Kilgore v. Younger*, 30 Cal.3d 770, 180 Cal.Rptr. 657, 640 P.2d 793 (1982); *Jennings v. Telegram–Tribune Co.*, 164 Cal.App.3d 119, 122, 210 Cal.Rptr. 485 (1985); *McClatchy Newspapers v. Superior Court*, 189 Cal. App.3d 961, 234 Cal.Rptr. 702 (1987). None of these California cases, however, has held that the "fair and true" issue is always one of law for the court to decide. Rather, California courts did no more than hold that the fairness and truth requirement is satisfied as a matter of law when the undisputed facts support only the conclusion that the defendant's account is "fair and true." *See, e.g., Kilgore*, 30 Cal.3d at 777, 180 Cal.Rptr. at 661, 640 P.2d at 797. At most, these California cases display a strong tendency "to dispose of defamation actions at the earliest possible stage of the proceedings *where the facts as alleged are insufficient as a matter of law to support a judgment for the plaintiff.*" *Jennings*, 164 Cal.App.3d at 128, 210 Cal.Rptr. at 490 (1985) (emphasis added). In *McClatchy*, the court stated that "case law indicates this ["fair and true"] decision is one of law when, as here, there is no dispute as to [the facts]...." 189 Cal.App.3d at 976, 234 Cal.Rptr. at 711. In *McClatchy*, reasonable minds could not have disagreed on the result; therefore, the court properly found a "word-for-word" account to be "fair and true" as a matter of law. *Id.* at 976, 234 Cal.Rptr. at 711.

In short, California case law does not hold that the "fair and true" issue is invariably one of law. California cases establish only that a court may decide the "fair and true" issue as a matter of law when there is only one reasonable conclusion to be drawn from the undisputed facts. When reasonable minds could disagree about whether or not a report in a public journal is "fair and true," summary judgment is improper. *See also Schiavone Construction Co. v. Time, Inc.*, 735 F.2d 94, 98 (3d Cir.1984) (applying New Jersey's common law "fair and accurate" privilege); *Hanish v. Westinghouse Broadcasting Co.*, 487 F.Supp. 397, 402 (E.D.Pa.1980) (applying Pennsylvania's common law "fair and accurate" privilege).

I conclude that summary judgment was improper because reasonable minds could differ as to whether the *National Enquirer's* story is a "fair and true" account of Kathy Jetter's affidavit.

Some flexibility is tolerated in deciding what is a fair report. *McClatchy Newspapers*, 189 Cal.App.3d at 976, 234 Cal.Rptr. at 702. A report is "fair and true" if, to the average reader, the report captures the "gist" or "sting" of the proceedings being reported upon. *Kilgore v. Younger*, 30 Cal.3d 770, 777, 180 Cal.Rptr. 657, 661 (1982). The sole basis of the *National Enquirer* article was Jetter's single statement that "[u]pon information and belief, the respondent [Dorsey] has AIDS related syndrome and has been treated at Sloan Kettering in New York." In the present context, in which the newspaper report conveys more information than the information conveyed in the reported official proceeding, namely, Jetter's affidavit, the report is not "fair and true" if its "gist" or

---

tion whether a report was "fair and true" and thus privileged under Cal.Civ.Code 47(d), formerly 47(4), was treated as a matter of law for the court to decide. *Cox*, however, was decided on the basis of the "undisputed evidence." *See Id.* at 12556. Evidence includes inferences. In the present case, the "fair and true" question relates to statements in the *National Enquirer* article that give rise to differing inferences. Thus, *Cox* is not controlling here.

2. *Crane v. Arizona Republic* held that "whether a report meets the 'fair and true' standard is a matter of law, not fact, which is properly determined by the court where there is no dispute about the content of the official documents or proceedings upon which the report is based." *Crane v. Arizona Republic*, 729 F.Supp. 698, 720 (C.D.Cal.1989).

"sting" goes beyond the "gist" or "sting" of the allegations made in the official proceeding. *See Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 271 (7th Cir.1983) (applying Illinois' common law "fair and accurate report" privilege to a television broadcast of a Federal Trade Commission report).

On one hand, the *National Enquirer* article contains elements that could reasonably support a jury decision that the article is a "fair and true" report of Jetter's affidavit. The front-page headline says: "Mother of His Child Claims in Court ... Engelbert Has AIDS Virus." The heading of the one-page article says: "Mom of Superstar Singer's Love Child Claims in Court ... Engelbert Has AIDS Virus." A photo of Humperdinck appears with a caption that says "ENGELBERT DENIES he has the AIDS virus." The article also states: "Humperdinck's attorney Samuel Tannenbaum said there was no truth whatsoever to the charge that the singer has the AIDS virus and called it an 'utter fabrication.'" Looking at these elements, a reasonable jury could conclude that the article is a "fair and true" account and that its "gist" or "sting" merely captures and does not go beyond the "gist" or "sting" of the allegations made in Jetter's affidavit.

On the other hand, the article contains elements that could reasonably support a jury decision that the "gist" or "sting" of the article goes beyond the "gist" or "sting" of Jetter's affidavit. The article quotes Jetter as saying that she is 100 percent sure Dorsey has the AIDS virus. The article quotes Jetter's private investigator, Jordan Stevens, as saying Dorsey actually "tested positive for AIDS in early 1985" and that "the disease remains." Stevens based this information on "an intensive investigation of the singer during the past five years." The article reports the opinion of a medical expert that "[p]eople with ARC [Aids Related Complex] are infected with the AIDS virus, show some symptoms of AIDS—and almost surely will go on to develop full-blown AIDS." Jetter's affidavit, however, did not say that Dorsey actually tested positive for AIDS, or that he will develop a full-blown case of

AIDS, or that Jetter's "belief" he had AIDS was based on a five-year "intensive" investigation. Keeping this in mind, a reasonable jury could conclude that the "gist" or "sting" of the article, and of Jordan Stevens' statements in particular, goes beyond the "gist" or "sting" of Jetter's mere "belief" that Dorsey has AIDS.

"Where, as here, reasonable minds could disagree on what is fair, the issue is a question of fact to be determined by the jury." *Pierce v. San Jose Mercury News*, 214 Cal.App.3d 1626, 1634, 263 Cal.Rptr. 410, 415 (1989); *see also Baxter v. MCA, Inc.*, 812 F.2d 421, 424 (9th Cir.1987) (summary judgment improper where reasonable minds could disagree as to whether one musical composition is strikingly similar to another.) Because reasonable minds could differ on the "fair and true" issue, I conclude that the district court erred in granting summary judgment for the *National Enquirer*.

As an alternative ground for summary judgment, the district court applied the *Florida Star* doctrine, which provides First Amendment protection to truthful reporting of judicial proceedings. See *Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989). The district court held that because the *National Enquirer* article was "fair and true" as a matter of law, the article was protected by the *Florida Star* doctrine as well as by California Civil Code § 47(4). As stated above, however, I believe that the district court erred in holding that the *National Enquirer* article was "fair and true" as a matter of law. Accordingly, I conclude that the district court also erred in applying the *Florida Star* doctrine as an alternative ground for granting summary judgment.

Finally, I believe that the "incremental harm" doctrine is not available as an alternative ground for summary judgment. First, the Supreme Court recently "reject(ed) any suggestion that the incremental harm doctrine is compelled as a matter of First Amendment protection for speech." *Masson v. New Yorker Magazine*, —— U.S. ——, 111 S.Ct. 2419, 2436, 115 L.Ed.2d 447 (1991). Second, no Califor-

nia cases suggest that California applies this doctrine. Thus, the "incremental harm" doctrine was erroneously invoked as an alternative ground for summary judgment.

I would reverse the judgment of the district court.